### 71310. ADC CONSTRUCTION COMPANY v. McDANIEL GRADING, INC.
#### (338 SE2d 733)

BIRDSONG, Presiding Judge.

Stay of Arbitration. Plaintiff, ADC Construction Company, was the general contractor for the developer of the River Pointe Apartments being constructed in Dunwoody, Georgia. On April 18, 1984, plaintiff entered into a subcontract with McDaniel Grading, Inc., wherein McDaniel agreed to perform certain grading and related work in accordance with the project plan and specifications prepared by B. G. Sanders & Associates, the River Pointe project architect.

Article I of the subcontract provided that McDaniel was to perform his work in accordance with the terms of the "Contract Documents." The "Contract Documents" were identified as the subcontract, the "General Conditions of the Contract for the Construction of Buildings," of the current edition of the American Institute of Architects (AIA), and designated documents prepared by the architect for the River Pointe project. It further provided: "The Contract Documents are hereby made part of this Agreement." The "General Conditions" contract of the AIA was identified as AIA Document A201. Paragraph 5.3.1 of Article 5 of the A201 document covered relations between the general contractor and the subcontractors. It required the general contractor to bind the subcontractors to the terms of the "Contract Documents" and for the subcontractors to assume toward the owner the obligations and responsibilities of the general contractor. It also granted to "the Subcontractor . . . the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Documents, has against the Owner." Paragraph 7.9.1 of Article 7 of A201 required "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof except [the Architect's decisions in matters relating to artistic effect], and except for claims which have been waived by the making or acceptance of final payment . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. . . ."

McDaniel commenced work and performed designated grading and other associated work assigned by the contractor, ADC. McDaniel contends that his grading work was based upon a mutual understanding that there was enough usable soil on the site to make the grades called for in the plans and specifications. He says the site was not balanced and there was insufficient usable soil to complete the designated work without a substantial amount of additional soil, which he was not obligated to provide under the subcontract. McDaniel ceased work on the project and ADC demanded that McDaniel return to work and gave notice of an alleged breach on August 28, 1984. ADC alleges McDaniel refused to return to work and the contract was terminated on September 4, 1984.

McDaniel presented a claim to ADC on August 20, 1984 for final payment. On August 28, he met with two ADC representatives and he said they agreed to a compromise settlement of his final invoice and the additional work for which he made claim. McDaniel stated they reached agreement on a figure of $145,000 plus other charges, provided he completed certain reshaping work. He alleges that when he attempted to finish the work, he was stopped by ADC's employees. On November 6, 1984, McDaniel filed a Demand for Arbitration with the American Arbitration Association and served the architect and ADC. On November 26, 1984, ADC filed this action for a Stay of Arbitration, alleging that McDaniel breached his contract, refused to return to the job site within the time permitted, that there was no valid agreement to submit the claims of either party to arbitration, and if such agreement did exist, it has not been complied with and has been waived, and/or that arbitration is barred by limitation of time. The trial court found that the contract involved interstate commerce, that the Federal Arbitration Act was applicable, and denied the stay. ADC brings this appeal. *Held*:

1. Appellant contends that the trial court erred in finding that the contract between the parties involved transactions in interstate commerce. We do not agree. Where the transactions out of which the claim for arbitration arose involve "commerce" within the meaning of 9 USC § 1 of the Federal Arbitration Act, state law and policy must yield to federal law. *Hilton Constr. Co. v. Martin Mechanical Contractors*, 251 Ga. 701, 702 (308 SE2d 830). "Commerce," within the meaning of the Arbitration Act, means interstate commerce, and the determination of whether a contract evidences transactions in interstate commerce is a question on which federal rules of contract construction and interpretation govern. *In re Mercury Constr. Corp. v. Moses H. Cone Memorial Hosp.*, 656 F2d 933, 938 (4th Cir. 1981), aff'd 460 U. S. 1.

ADC and McDaniel are both Georgia companies and this contract was to be fully performed in Georgia. However, the affidavit of

the president of McDaniel revealed that he used equipment in the performance of this contract that was manufactured in Japan and purchased in Canada. He also used equipment purchased in Louisiana and North Carolina. One electrical subcontractor on this project was from Kingsport, Tennessee. A mechanical subcontractor was from Arkansas. An affidavit of an employee of ADC showed he was an Alabama resident. An electrical subcontractor used material incorporated into the project which was purchased in New Jersey. Another subcontractor used trusses and floor systems bought in Alabama.

Although this contract was to be performed in Georgia and the general and subcontractor were both from Georgia, where the contractor uses employees from another state, and material incorporated into the construction is purchased in another state, and some of the subcontractors are from another state, these facts are sufficient to support a finding of the trial court that this contract involved "commerce" as that term is used in the Federal Arbitration Act. *Metro. Industrial Painting Corp. v. Terminal Constr. Co.*, 287 F2d 382, 384 (2d Cir. 1961), cert. den. 368 U. S. 817; accord *Warren Bros. Co. v. Community Bldg. Corp.*, 386 FSupp. 656, 664 (MD NC 1974). Other federal courts have found that where a subcontractor purchased products from another state which were incorporated into the construction, and used equipment shipped to the construction site from another state, this is sufficient to support the finding of the trial court that the contract is one involving interstate commerce as contemplated by the Federal Arbitration Act. *American Home Assur. Co. v. VECCO Concrete Constr. Co.*, 629 F2d 961, 963 (4th Cir. 1980). Accordingly, we find sufficient indicia of interstate commerce in the record to support the finding of the trial court.

2. It is argued, by appellant, that the trial court erred in holding that a valid agreement to arbitrate existed between the parties. In the subcontract between these parties, the subcontractor agreed to perform his work in accordance with the "contract documents." And, the "contract documents," which were identified and listed, were specifically "made a part of this Agreement." One document incorporated by reference was the AIA form A201. That document granted to the subcontractor "the benefit of all rights, remedies and redress against the Contractor that the Contractor . . . has against the Owner." The contractor had the right of arbitration against the owner of "[a]ll claims, disputes and other matters . . . arising out of, or relating to, the Contract Documents or the breach thereof . . ." with certain exceptions not here applicable. Incorporation by reference in contract is generally effective to accomplish its intended purpose where the provisions to which reference is made have a reasonably clear and ascertainable meaning. *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 717 (234 SE2d 363); accord *Consolidated Freightways*

*Corp. v. Syncroflo*, 164 Ga. App. 275, 277 (294 SE2d 643); *Hartline-Thomas v. Arthur Pew Constr. Co.*, 151 Ga. App. 598, 599 (260 SE2d 744). The referenced provisions here had a reasonably clear and ascertainable meaning. Hence, provisions in the subcontract which incorporated by reference the "general conditions" of the prime contract effectively bound the subcontractor to assume toward the general contractor those responsibilities and obligations which the general contractor assumed toward the owner, but also gave the subcontractor the benefit of those conditions in the prime contract which required the parties to submit contract disputes to arbitration. *J. S. & H. Constr. Co. v. Richmond County Hosp. Auth.*, 473 F2d 212, 216 (5th Cir. 1973).

It is uncontested that the subcontractor was to perform his work in accordance with the requirements set forth in the incorporated documents. Thus, we find no legal basis to conclude the general contractor is not also bound to the subcontractor by the same incorporated documents, which provided for arbitration of all "claims, disputes and other matters . . . arising out of, or relating to" the contract, or a breach thereof. The parties had a valid agreement to arbitrate disputes arising out of the contract.

3. Appellant alleges the trial court's failure to find that McDaniel had not complied with the agreement, had waived arbitration, or was barred because of the contractual time limitation, is error.

We have determined that interstate commerce is involved and that the Federal Arbitration Act, 9 USC § 1 et seq., controls the issues involved. The U. S. Supreme Court, in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1 (103 SC 927, 74 LE2d 765) (1983) construed a construction contract arbitration clause which provided that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration," and found that there was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of [Section 2 of the Federal Arbitration Act] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act [i.e., it involves interstate commerce]. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or *an allegation of waiver, delay, or a like defense to arbitrability*." (Emphasis supplied.) Id. at 24-25. The arbitration clause construed in *Cone* was almost identical to the one in the instant case. Hence, we will apply federal law to the case before the bar to determine issues of arbitrability. *Cone*, supra at 24; see also *Shear-*

*son/American Express v. Henson*, 169 Ga. App. 950, 951 (315 SE2d 485).

It was held, in *United Steelworkers of America v. American Mfg. Co.*, 363 U. S. 564, 567-568 (80 SC 1343, 4 LE2d 1403), that when the parties to a contract have agreed to submit all questions of contract interpretation to the arbitrator, the function of the court is very limited; "[i]t is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the party is right or wrong is a question of contract interpretation for the arbitrator. . . ." Any dispute between the parties to the contract as to " 'the meaning, interpretation and application' " of the agreement is for the arbitrators. Id. at 569.

The issues between ADC and McDaniel prior to this action were whether McDaniel's work had been done properly and completely and the amount due the subcontractor for work done under the contract and additional work requested by ADC. There was an allegation by ADC that McDaniel breached the contract and the counterargument by McDaniel that ADC prevented him from completing his work following an agreement. These issues clearly fall within the broadly stated arbitration clause and provide arbitrable issues. "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons v. Livingston*, 376 U. S. 543, 557 (84 SC 909, 11 LE2d 898); see Annot. 26 ALR3d 604, 606 and cases cited at 610 supporting referral of similar issues to arbitrator. Even a question of fraud in the inducement should be submitted to the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395 (87 SC 1801, 18 LE2d 1270). And, questions as to arbitrability must be considered in the light of federal policy favoring arbitration, and any doubt concerning the scope of arbitrability should be resolved in favor of arbitration. *Cone*, supra at 24-25.

ADC alleges that McDaniel had not complied with the agreement, had waived arbitration, or was barred because of a time limitation. Whether McDaniel had complied with or had breached the agreement is clearly included as an arbitrable issue within the arbitration clause itself. While arbitration is a waivable contract right, a waiver is not to be inferred lightly. *Midwest Window Systems v. Amcor Indus.*, 630 F2d 535, 536 (7th Cir. 1980). The crucial question is whether under the totality of the circumstances, the alleged defaulting party has acted inconsistently with the contractual right of arbitration. *Shinto Shipping Co. v. Fibrex &c. Co.*, 572 F2d 1328, 1330 (9th Cir. 1978); *Dickinson v. Heinold Securities*, 661 F2d 638, 641 (7th Cir. 1981); *Midwest Window Systems*, supra at 537. Although both parties entered into preliminary negotiations to settle

the matter, such negotiation is not a waiver. *Dickinson*, supra at 641; *Southwest Industrial Import &c. v. Wilmod Co.*, 524 F2d 468, 470 (5th Cir. 1975). We have found no conduct on the part of McDaniel which could be construed as a waiver of the contract right of arbitration.

Procedural questions such as timeliness of a request for arbitration, or time-barred defenses presented by one party, are to be resolved by the arbitrators unless the contract expressly provides for resolution by a court. *John Wiley*, supra; *County of Durham v. Richards & Assoc.*, 742 F2d 811, 815 (4th Cir. 1984); *Belke v. Merrill Lynch &c.*, 693 F2d 1023, 1027 (11th Cir. 1982); *O'Neel v. Nat. Assn. of Securities Dealers*, 667 F2d 804, 807 (9th Cir. 1982); *Conticommodity Svcs. v. Philip & Lion*, 613 F2d 1222, 1226 (2d Cir. 1980). Timeliness of demand for arbitration is a question for the arbitrator. See generally Annot. 26 ALR3d 604, § 5, pp. 615-620.

The trial court did not err in refusing to stay arbitration.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED NOVEMBER 27, 1985 —
REHEARING DENIED DECEMBER 12, 1985 —

*Richard Alan Gordon*, for appellant.
*David R. Hendrick, Jeffrey L. Evans*, for appellee.