A95A2191. NORTH AUGUSTA ASSOCIATES LIMITED PARTNERSHIP et al. v. 1815 EXCHANGE, INC. et al.

(469 SE2d 759)

SMITH, Judge.

The principal issue in this appeal is whether the parties to a contract complied with its arbitration provisions. We must decide whether this determination must be made by the trial court or by arbitrators. Appellants contend that under the Federal Arbitration Act (FAA), 9 USC § 1 et seq., and the Georgia Arbitration Code (GAC), OCGA § 9-9-6 et seq., the trial court must make a threshold decision that the parties have complied with conditions precedent to arbitration before issues may proceed to arbitration. Appellees contend the FAA preempts the GAC and the issue of compliance is solely one for the arbitrators.

North Augusta Associates Limited Partnership ("North Augusta") entered into an agreement with contractor Barge-Wagener, Inc. for the construction of a project located in North Augusta, South Carolina. Barge-Wagener subsequently changed its name to 1815 Exchange, Inc. (1815 Exchange). The agreement included an arbitration provision and a "resolution of claims and disputes provision" reciting conditions to be met prior to submission of a claim or dispute to arbitration. The claims and disputes provision stated that claims were to be submitted to the architect, who would review them and take action within ten days of their receipt. The architect was directed to request additional information from the claimant; inform the claimant when action would be taken on the claim; reject the claim in whole or in part, stating reasons for rejection; recommend approval of the claim; or suggest a compromise. If a claim was not resolved following the architect's response, the claimant was required to submit additional supporting data, modify the claim, or notify the architect that the initial claim stood. If the claim then remained unresolved, the architect was to render a "final and binding decision" subject to arbitration. The agreement authorized arbitration upon the demand of either party of "[s]uch controversies or claims" described in the resolution procedure of the agreement. Notably, the agreement stated that the architect's decision, with certain exceptions, was a condition precedent to arbitration.

In November 1994, 1815 Exchange filed a demand for arbitration against North Augusta, NAPSC, L.P., and Julian LeCraw and Company, Inc. (collectively referred to as appellants unless otherwise noted), alleging the latter two parties were general partners of North Augusta. 1815 Exchange claimed that the construction agreement had been breached and sought damages of approximately $1.5 million. Appellants then filed a verified petition for declaratory judgment and a motion for a stay of arbitration in Cobb County Superior Court. They contended, inter alia, that Barge-Wagener and 1815 Exchange failed to comply with the agreement's provisions relating to the timing for submission of written claims and failed to comply with the conditions precedent for demanding arbitration.

Following a hearing, the trial court denied appellants' petition and motion for stay. It ruled that the FAA, 9 USC § 1 et seq., rather than the GAC, OCGA § 9-9-1 et seq., governed the issues and further found that issues regarding compliance with notice provisions of the contract were for arbitrators, not the court, to decide. This appeal ensued.

1. We first address appellants' contention that the trial court erroneously found that the FAA, not the GAC, applies to the issues here. Appellants agree that the "substantive portions" of the FAA apply to this case but contend that the FAA does not preempt the field of arbitration and that state procedural mechanisms that are consistent with the goals of the FAA are applicable. We agree.

We do not overlook our earlier holding in *ADC Constr. Co. v. McDaniel Grading*, 177 Ga. App. 223, 226 (3) (338 SE2d 733) (1985) that the FAA controls an agreement involving interstate commerce.[1] That holding has been modified, however, by *Volt Information Sciences v. Bd. of Trustees &c.*, 489 U. S. 468 (109 SC 1248, 103 LE2d 488) (1989). In *Volt Information Sciences*, the agreement contained a choice of law provision reciting that the contract would "be governed by the law of the place where the Project is located." Id. at 470. The same choice of law provision appears in this case.[2] The Supreme Court deferred to the sanctity of individual contracts consistent with the goals of the FAA and held that California arbitration law was not preempted by the FAA: "Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." Id. at 479. The entire field of state arbitration law therefore is no longer preempted by federal

[1] The parties do not dispute that interstate commerce is involved here.

[2] The provision states, "The contract shall be governed by the law of the place where the project is located."

arbitration law in all cases involving commerce. State law may apply where parties agree to be bound by state arbitration law, so long as that law does not conflict with the FAA. For that reason, the trial court's ruling that the FAA preempts state arbitration law is reversed.

2. Appellants contend that the trial court must determine whether 1815 Exchange complied with the conditions precedent to arbitration because "[t]he issue of compliance with the arbitration agreement itself goes to the essence of arbitrability." They contend that under *either* the FAA or GAC, "the trial court must review the contract to decide if [they] agreed to arbitrate these specific claims." 1815 Exchange agrees that arbitrability is an issue for the court but defines arbitrability differently, contending that a claim is arbitrable if the contract provides merely that the dispute at issue is subject to arbitration.

We disagree with the definition of arbitrability proposed by 1815 Exchange. We are bound to "give meaning to every term rather than construe any term as meaningless," and we are required "to construe a contract so as to uphold the contract in whole and in every part." (Citations and punctuation omitted.) *Harris County v. Penton*, 211 Ga. App. 498, 499 (1) (439 SE2d 729) (1993). 1815 Exchange's interpretation of arbitrability effectively renders other portions of the agreement meaningless. If arbitrability here depended only on whether an arbitration provision appeared in the agreement, the conditions precedent to arbitration clearly set forth in the agreement would have no meaning. The parties would be compelled to arbitrate issues even where the conditions precedent were not met. To so construe the contract would be a failure to uphold the conditions precedent language.

The general arbitration provision recites: "Any controversy or claim arising out of or related to the contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." This language does *appear* broad. The scope of arbitration is limited, however, by language in the "claims and disputes" section of the agreement. That section provides that "[c]laims . . . *shall* be referred initially to the architect for action . . . A decision by the architect . . . *shall be required as a condition precedent* to arbitration or litigation of a claim between the contractor and owner as to all such matters arising prior to the date final payment is due." (Emphasis supplied.) Similarly, the agreement recites that "[s]uch controversies or claims upon which the architect has given notice and rendered a decision as provided in [the preceding section] shall be subject to arbitration." As noted above, the "preceding section" contains detailed directions to the architect and claimant concerning procedures re-

quired to be used when a claim or dispute arises.[3] Clearly, the agreement provides that only claims made in compliance with the procedures defined by the agreement may be arbitrated. *Not* clear from the agreement is who determines whether the conditions precedent were met: the arbitrators or the trial court.

*First Options v. Manuel Kaplan*, 514 U. S. ___ (115 SC 1920, 131 LE2d 985) (1995) is dispositive in this regard. In *First Options*, the Supreme Court addressed the role of the trial court in determining whether the parties agreed to arbitrate the issue of arbitrability. Specifically, it addressed "who should have the primary power to decide" arbitrability of the dispute. 131 LE2d at 992. The Court stated that "if . . . the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely independently. [This conclusion] flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration." (Citations and emphasis omitted.) Id. at 993. An agreement to arbitrate arbitrability must be shown by clear, unmistakable evidence. Id. at 994.

Under the clear terms of the agreement in this case, the parties must comply with conditions precedent before proceeding to arbitration. The record before us, however, does not clearly and unmistakably show that the parties agreed that issues regarding compliance with those conditions are arbitrable. *First Options* provides, in such circumstances, that the *trial court* independently determine whether the claims are arbitrable. The trial court erred in finding that the issue of compliance was for the arbitrators to determine. We therefore remand this case to the trial court for determination of whether the claims may proceed to arbitration.

3. Appellants also contend the trial court erroneously ruled that NAPSC, L.P. (NAPSC) and Julian LeCraw and Company, Inc. (LeCraw) are proper and necessary parties. They contend that the agreement was between Barge-Wagener and North Augusta only and thus that NAPSC and LeCraw are not liable. We disagree. According to the construction agreement, NAPSC is North Augusta's general partner, and LeCraw is the general partner of NAPSC.

NAPSC and LeCraw are necessary parties to the litigation. Their assets are available to satisfy any debt of North Augusta that results from the arbitration only if they are parties to the arbitration. "A

---

[3] The breadth of the provision is also modified by recitation that certain waived claims as well as controversies regarding "aesthetic effect" are not subject to arbitration.

general partner in a limited partnership has the same rights and liabilities analogous to those of a partner in an ordinary general partnership, and he may become individually liable for all of the debts of the partnership. [Cits.] Partners in an ordinary general partnership are jointly liable with the partnership for all debts and obligations of the partnership. [Cits.] But, to bind individual assets of a partner, the partner himself must be served and must have had his day in court." *Co-Op Mtg. Investments Assoc. v. Pendley*, 134 Ga. App. 236, 239 (1) (214 SE2d 572) (1975). "To bind the partner, and thus have complete relief, he must be served with process." Id. at 240.

Because NAPSC and LeCraw are general partners of North Augusta, they are proper and necessary parties, and the trial court did not err in ruling that they were properly included in the litigation.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Johnson, J., concur.*

DECIDED MARCH 6, 1996 —
RECONSIDERATION DENIED MARCH 19, 1996 —

*Smith, Currie & Hancock, Aubrey L. Coleman, Jr., Joseph P. Henner*, for appellants.

*Ware, Snow, Fogel, Jackson & Greene, Patrick A. Thompson, David A. Dial, D. Lee Roberts, Jr.*, for appellees.