**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A1331. ARCHER WESTERN CONTRACTORS, LLC et al. v.
HOLDER CONSTRUCTION COMPANY et al.

BRANCH, Judge.

Appellants Archer Western Contractors and Capital Contracting Company (collectively, "AWC") filed the instant suit against appellees Holder Construction Company, Manhattan Construction Company, C. D. Moody Construction Company, and Hunt Construction Group (collectively, "HMMH") seeking a declaration that HMMH's assertion of its right to withhold payments to its subcontractor AWC was barred by res judicata. HMMH filed a motion to dismiss AWC's action and to compel arbitration, which the trial court granted. On appeal from this order, AWC argues that the trial court erred when it granted HMMH's motion to dismiss because the arbitration provision is unenforceable and because the trial court, rather than an

arbitrator, was required to determine whether res judicata barred HMMH's assertion of its right to withhold payments. We disagree with these contentions and therefore affirm.

Whether a valid and enforceable arbitration agreement exists is "a question of law." *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013). We therefore review a trial court's order granting or denying a motion to compel arbitration de novo. Id.

Although this appeal is an outgrowth of litigation that has occupied our appellate courts since 2011, the relevant facts are not in dispute. In late 2004, the City of Atlanta

> entered into a contract ("the Main Contract") with a joint venture comprised of defendants [HMMH] regarding the construction project.[1] The General Contractor entered into a contract ("the Subcontract") with a joint venture comprised of defendants [AWC] to perform work on the project. Pitts was employed by [AWC] to work on the project. [AWC] contracted with A&G Trucking for trucking and hauling work on the project.

---

[1] All of the parties to the current declaratory action were defendants in the *Pitts* litigation.

2

Pursuant to the Main Contract, [HMMH] would serve as construction manager for the construction of the Atlanta airport's Maynard Holbrook Jackson, Jr., International Terminal, identified in the Main Contract as the "project." The Main Contract authorized [HMMH] to enter into subcontracts with other entities. [HMMH] was obligated to require any subcontractors to be bound to it by the terms of the Main Contract and to assume to it all obligations and responsibilities which it assumed to the City under the Main Contract. The Main Contract also provided that, "where appropriate, [HMMH] shall require each Subcontractor to enter into similar agreements with its Sub-Subcontractor."

The Main Contract specified that [HMMH], its subcontractors, and its sub-subcontractors were named insureds under the City's "Owner's Controlled Insurance Program," which was made a part of the Main Contract. The stated purpose of the Owner's Controlled Insurance Program was "to provide one master insurance program that provides broad coverage with high limits that will benefit all participants involved in the project." The Main Contract required that the named insureds comply with all requirements of the Owner's Controlled Insurance Program, which pertinently provided: "[HMMH] shall, at its own expense, purchase and maintain such insurance as will protect Contractor, Owner, Construction Manager, Design Consultant, and their Trustees, Directors, Officers, Partners, Agents, Representatives, and Employees from claims of the type set forth below: Automobile, Bodily Injury and Property Damage Liability Insurance covering all automobiles, whether owned, non-owned, leased or hired, with not less

3

than the following limits:. Bodily Injury - $10,000,000 per person and occurrence."

(Punctuation omitted.) *Estate of Mack Pitts v. City of Atlanta* ("*Pitts I*"), 312 Ga. App. 599, 601-602 (719 SE2d 7) (2011).

> HMMH hired AWC as one of its subcontractors on Phase 2 of the project.
>
> Pursuant to the [Phase 2] Subcontract, [AWC] agreed to be bound by the terms of the Main Contract, to assume toward [HMMH] all duties and obligations that [HMMH] owed the City under the Main Contract, and to bind all lower tier subcontractors to the obligations set forth in the Main Contract and the Subcontract. The Subcontract expressly required [AWC] to maintain automobile liability insurance coverage for "owned, hired and non-owned vehicles with a $10,000,000 combined single limit for bodily injury and property damage."

(Punctuation omitted.) *Pitts I*, 312 Ga. App. at 602.

In June 2007, a truck operated by A&G Trucking, a subcontractor hired by AWC, killed Mack Pitts, a worker at the site. After Pitts's estate was unable to collect the judgment of $5.57 million it obtained against A&G, the estate sued the City, HMMH, and AWC, asserting inter alia that Pitts had been a third-party beneficiary of the Subcontract's provisions requiring defendants' lower tier subcontractors, including A&G, with $10 million of automobile liability coverage. In the course of the estate's

4

action, HMMH asserted a cross-claim against AWC that AWC had breached its duty under the Phase 2 subcontract to indemnify HMMH as to the estate's claims.

In December 2010, the trial court granted the *Pitts* defendants' motions for summary judgment on the ground that Pitts had not been a third-party beneficiary of the Phase 2 subcontracts. The estate appealed this ruling to this Court, which concluded that Pitts had indeed been a third-party beneficiary of the Phase 2 subcontracts. See *Pitts I*, 312 Ga. App. at 603-604 (1) (a) (i). The City appealed this Court's ruling to the Supreme Court of Georgia, which vacated this Court's decision in *Pitts I* and remanded for further consideration of the third-party beneficiary question. See *Archer Western Contractors v. Estate of Mack Pitts* ("*Pitts II*"), 292 Ga. 219, 230 (4) (735 SE2d 772) (2012). On remand, this Court once again concluded that Pitts had been a third-party beneficiary of the Phase 2 subcontracts. *Estate of Mack Pitts v. City of Atlanta* ("*Pitts III*"), ___ Ga. App. ___, 2013 Ga. App. LEXIS 654 (Case No. A11A1487, decided July 16, 2013), slip. op. at * 5. We therefore reversed the trial court's grant of summary judgment to the construction companies as well as its denial of summary judgment to the estate. Id.

In the same December 2010 order that granted summary judgment to the *Pitts* defendants and formed the basis of the *Pitts I, II,* and *III* appeals, the trial court also

5

denied HMMH's cross-motion for summary judgment and granted AWC's cross-motion for the same, holding that AWC had no duty to defend or indemnify HMMH from any losses incurred in the course of operations at the construction site under the Phase 2 subcontract. HMMH did not appeal this portion of the December 2010 order. In December 2011, however, HMMH notified AWC that it would not make any additional payments to AWC under these two parties' Phase 3 subcontract until the conclusion of the *Pitts* litigation.

AWC brought this action seeking a declaration that it was owed money under Phase 3 of the project and that the trial court's order in the Phase 2 litigation precluded HMMH from withholding payments due under the Phase 3 subcontract when such withholding was premised on AWC's alleged breach of the Phase 2 subcontract. In its answer and counterclaim, HMMH justified its refusal to make additional payments on the ground that AWC had "breached its contractual obligations to HMMH" in the Phase 2 subcontract, in that AWC had failed to "ensur[e] that A&G carried the requisite insurance," resulting in damage to HMMH. HMMH then notified AWC of its decision to arbitrate this dispute under Article 14.3.2 of the Phase 3 subcontract, which provided that disputes "arising out of or related to the Work or the [Phase 3] Subcontract or any breach thereof . . . shall be decided, at the sole option of [HMMH],

6

by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect." AWC responded that a forum selection clause in a supplemental provision of the Phase 3 subcontract placed "venue and jurisdiction" for any "legal action or proceeding . . . exclusively in the Federal District Court for the Northern District of Georgia or the State Courts in Fulton County, Georgia." AWC also asserted that because HMMH had not appealed the trial court's 2010 ruling that AWC had no duty to defend or indemnify HMMH from losses arising from the construction project, HMMH could no longer argue that it did not owe AWC money under the Phase 3 subcontract.

After a hearing, the trial court found that the instant dispute was within the scope of the Phase 3 subcontract's arbitration clause, which was not supplanted by the supplemental provision, and that because the arbitration agreement was governed by the Federal Arbitration Act and applicable federal law, the res judicata effect of the trial court's 2010 judgment was for the arbitrator, not a court, to decide.

1. We first consider the law applicable to the Phase 3 subcontract at issue, including its arbitration provisions.

AWC has not disputed the trial court's holding that the Federal Arbitration Act ("FAA") applies here.[2] However, the Phase 3 subcontract, which includes the arbitration provisions at issue, also includes a general provision that "[a]ll matters relating to the validity, performance, or interpretation of this Subcontract shall be governed by the laws of the state where the Project is located" – here, Georgia. However, when a Georgia court rules on the issue whether parties agreed to arbitrate a claim under the FAA, it is "required to apply ordinary state law principles governing the formation of contracts." *Simmons Co. v. Deutsche Financial Svcs. Corp.*, 243 Ga. App. 85, 89 (2) (532 SE2d 436) (2000). Further, the rule of lex fori provides that "Georgia courts will apply Georgia law governing procedural or remedial matters," and this Court has characterized the GAC as "a body of procedural law setting forth the public policy of this State with respect to the enforcement of agreements to arbitrate." *Continental Ins. Co. v. Equity Residential Props. Trust*, 255 Ga. App. 445, 445 (565 SE2d 603) (2002). "State law may apply where parties agree to be bound by state arbitration law, so long as that law does not conflict with the FAA." *North*

---

[2] Compare the FAA, 9 USCS § 1 et seq., with the Georgia Arbitration Code ("GAC"), OCGA § 9-9-1 et seq.

*Augusta Assocs. Partnership v. 1815 Exchange*, 220 Ga. App. 790, 792 (1) (469 SE2d 759) (1996).

2. AWC's first contention is that the Phase 3 subcontract's provision placing "venue and jurisdiction" of any "legal action or proceeding" arising from the subject matter of the subcontract "exclusively" in specific Georgia courts supplants the subcontract's arbitration provisions. We disagree.

The arbitration provision at issue here states that disputes "arising out of or related to the Work or the [Phase 3] Subcontract or any breach thereof . . . shall be decided, at the sole option of [HMMH], by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect." As the trial court noted, the arbitration provision also provides that "[i]n the event that [HMMH] elects not to arbitrate, any lawsuit brought hereunder must be brought in a court of competent jurisdiction in the state where the Project is located or in the State of Georgia, where both parties agree to submit to jurisdiction and venue." Finally, and as we have noted above, the supplemental provision places "venue and jurisdiction . . . exclusively in the Federal District Court for the Northern District of Georgia or the State Courts in Fulton County, Georgia," such that "[AWC] hereby consents and submits to the exclusive personal jurisdiction of such courts, and

9

consents, submits to and agrees that venue for *such legal action or proceeding* is proper in said courts and county, regardless of [AWC]'s domicile." (Emphasis supplied.)

We are bound to construe any contract, whether it includes an agreement to arbitrate or not, in such a way as to give effect to each part of that contract. See OCGA § 13-2-2 (4). It is not only possible but necessary to read the arbitration provisions and the supplemental provision together such that HMMH has the power to elect in the first instance whether a dispute "arising out of or related to the Work or the Subcontract or any breach thereof" should go into arbitration. If HMMH elects not to send such a dispute into arbitration, an outcome clearly contemplated by the first-quoted section of the arbitration provision, both the second section of the arbitration provision and the supplemental provision place venue and jurisdiction of any legal actions arising from the subject matter of the work or subcontract in a Georgia federal or state court. Like the trial court, then, we find no ambiguity or inconsistency between the subcontract's arbitration provisions and the supplemental provision designating "exclusive" venue and jurisdiction for legal actions concerning disputes HMMH might elect not to arbitrate.

3. AWC also argues that a Georgia court enforcing an agreement to arbitrate under the FAA should first decide whether a dispute otherwise headed for arbitration is barred by res judicata. Again, we disagree.

> Against the backdrop of [the federal] policy favoring arbitration, a court uses a two-step process to determine reach of an arbitration agreement. First, a court must ascertain if the agreement's terms reach the plaintiff's claims. Second, a court must decide if any "legal constraints external to the parties' agreement" prevent application of the agreement to require arbitration of [a p]laintiff's claims.

*Hopkins v. World Acceptance Corp.*, 798 F. Supp. 2d 1339, 1344 (I) (B) (N. D. Ga. 2011), quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U. S. 614, 628 (II) (105 SCt 3346, 87 LE2d 444) (1985). Because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," the question whether parties have submitted a dispute to arbitration "is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." (Citations and punctuation omitted.) *Howsam v. Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83 (II) (123 SCt 588, 154 LE2d 491) (2002).

11

As a preliminary matter, it is clear that AWC's declaratory action, which is the "claim" at issue in this appeal, concerns AWC's right to payments under the Phase 3 subcontract. As such, and as the trial court held, AWC's action was subject to the parties' agreement to arbitrate claims arising "out of the Work or the Subcontract or any breach thereof." See *Hopkins*, 798 F.Supp.2d at 1345 (I) (C) (concluding that an arbitration agreement applied to a plaintiff's claims when those claims arose out of agreement and transactions between the parties).

Although "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide," the *Howsam* Court noted that such a question does not arise "where parties would likely expect that an arbitrator would decide the gateway matter." (Citation omitted.) 537 U. S. at 84 (II). Specifically, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." (Citation omitted.) Id. Thus "*an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled,*" and where the parties have not explicitly agreed otherwise, "prerequisites such as time limits, notice, laches, estoppel, and other *conditions precedent to an obligation to arbitrate . . . are for the arbitrators to decide.*" (Citation and punctuation omitted; emphasis supplied.) Id. at 85 (II).

12

Following *Howsam*, the United States Court of Appeals for the Eleventh Circuit has concluded that res judicata is just such an issue of "procedural arbitrability" properly left to an arbitrator. *Klay v. United Health Group*, 376 F.3d 1092, 1109 (III) (11th Cir. 2004) (because "[a]rbitrators . . . are empowered, absent an agreement to the contrary, to resolve disputes over whether a particular claim may be successfully litigated anywhere at all," the issue of res judicata "was for the arbitrator to decide in the first instance.").

We are persuaded that the question before us – whether HMMH's defense of nonpayment of money allegedly due to AWC under the Phase 3 subcontract is barred as res judicata as a result of the trial court's unappealed 2010 order concerning HMMH's cross-claim under the Phase 2 subcontract – is both "procedural" and one that emerged "out of the [parties'] dispute," *Howsam*, 537 U. S. at 84 (III), and thus, as the Eleventh Circuit concluded, properly left "for the arbitrator to decide in the first instance." *Klay*, 376 F.3d at 1109 (III); see also *Macon-Bibb Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (1) (458 SE2d 95) (1995) (decisions of the federal courts applying federal law "are not binding on [a Georgia appellate court], but their reasoning is persuasive") (citations omitted).

13

The Supreme Court of Georgia's decision in *Bryan County v. Yates Paving &*

*Grading Co.*, 281 Ga. 361 (638 SE2d 302) (2006), does not compel a different result.

Although that decision held that a question of res judicata was properly for the trial

court, it did so under the rubric of the Georgia Arbitration Code, rather than its federal

counterpart. Id. at 362-363. Like the trial court, we find this a critical distinction, for

two reasons. First, the Georgia Arbitration Code, in OCGA § 9-9-5 (a),[3] specifically

grants the trial court "discretion in deciding whether to apply" a bar by limitation of

time – a provision that has no analogue in the FAA, and which does not apply to the

---

[3] OCGA § 9-9-5 (a) provides: "*If a claim sought to be arbitrated would be barred by limitation of time* had the claim sought to be arbitrated been asserted in court, *a party may apply to the court to stay arbitration or to vacate the award, as provided in this part. The court has discretion in deciding whether to apply the bar.* A party waives the right to raise limitation of time as a bar to arbitration in an application to stay arbitration by that party's participation in the arbitration." (Emphasis supplied.)

14

instant case.[4] It was on the basis of OCGA § 9-9-5 (a) that the *Bryan County* Court concluded that res judicata was a matter for the trial court. 281 Ga. at 362-363. Second, and even assuming that "there is no presumption" under Georgia law that "an arbitrator is in a better position that a court to apply a legal doctrine such as res judicata," id. at 363 n. 2, the Eleventh Circuit has persuasively determined that a defense of res judicata is not a gateway dispute as to whether an agreement to arbitrate under the FAA is valid or whether a party's specific claim falls within the scope of the agreement, but is rather a question, like waiver, laches, and estoppel, that bears on the

---

[4] "The FAA preempts state laws that undermine enforcement of private arbitration agreements. 'To the extent that a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' it will be preempted by the FAA." *Simmons Co. v. Deutsche Financial Svcs. Corp.*, 243 Ga. App. 85, 89 (2) (532 SE2d 436) (2000), quoting *Volt Information Sciences v. Bd. of Trustees &c.*, 489 U.S. 468, 477 (109 SCt 1248, 103 LE2d 488) (1989). Although the parties have not explicitly raised the issue of preemption, we must necessarily conclude that OCGA § 9-9-5 (a) of the GAC is preempted by the FAA and does not apply in this case. To hold otherwise would undermine the purposes and objectives of the FAA. See *American Gen. Financial Svcs. v. Jape*, 291 Ga. 637, 644 (732 SE2d 746) (2012) (Nahmias, J., concurring) (Congress's intent, expressed through the FAA, is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible") (citations and punctuation omitted). Not only would the application of OCGA § 9-9-5 fail to move this arbitrable dispute out of court and into arbitration as quickly as possible, but it would also undermine the agreement's enforceability by forcing it into court.

final disposition of the parties' dispute and thus presents an issue of arbitrability for the arbitrator to decide. See *Klay*, 376 F.3d at 1109.

For these reasons, we conclude that the trial court did not err when it granted HMMH's motion to dismiss and to compel arbitration.

*Judgment affirmed. Phipps, C. J.,concurs. Ellington, P. J., concurs in judgment only.*

16