**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2019**

# In the Court of Appeals of Georgia

A18A1791. WEB IV, LLC et al. v. SAMPLES CONSTRUCTION, LLC.

MARKLE, Judge.

Web IV, LLC and William E. Brown, defendants and counterclaim plaintiffs in the breach of contract action below, appeal from the trial court's order staying litigation and compelling arbitration. Web IV argues that the trial court erred by referring to the arbitrator the threshold question of whether Samples Construction, the plaintiff below, waived its right to compel arbitration. Web IV also contends that the trial court erred by compelling arbitration as to other parties, with whom Web IV had not signed an arbitration agreement. Upon careful consideration, we affirm the trial court's order.

We review a trial court's order granting or denying a motion to compel arbitration de novo. *Miller v. GGNSC Atlanta, LLC*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013). Additionally, "[t]he construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 333 (685 SE2d 304) (2009).

The record shows the following relevant facts. On August 5, 2016, Samples Construction, LLC entered into a standard form cost-plus fee agreement (the "Agreement") with Web IV for the construction of the Governors Gun Club in Kennesaw, Georgia. The Agreement identified the Design-Build Institute of America's Standard Form of General Conditions of Contract between Owner and Design-Builder (the "General Conditions") as part of the contract documents. Article 10 of the General Conditions, titled "Contract Adjustments and Disputes," outlines a dispute resolution process. Pursuant to Section 10.2, in the event of any disagreement, the parties would first attempt to resolve the dispute through their respective field level representatives, and then through their respective senior representatives. If those efforts proved unsuccessful, the parties would submit to non-binding mediation. Section 10.3.1 provides for arbitration:

Any claims, disputes or controversies between the parties arising out of or relating to the Agreement, or the breach thereof, which have not been resolved in accordance with the procedures set forth in Section 10.2 above shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the AAA then in effect, unless the parties mutually agree otherwise.

The parties further agreed, under Section 12.3.1, that the contract "shall be governed by the laws of the place of the Project, without giving effect to its conflict of law principles."

The contract was signed by Bert Brown, managing member of Web IV, and Michael Samples, owner of Samples Construction. Work proceeded under the contract until April 18, 2017, when Brown sent an e-mail to Samples terminating the Agreement effective immediately. Samples Construction filed a materialman's and mechanic's lien against the property on June 9, 2017, seeking $526,960.34 in payment for work that had already been performed. Then, two subcontractors filed liens against the property as well. Web IV responded by filing a Notice of Contest of Lien, demanding that Samples Construction and subcontractors file suit within 60 days or their liens would be cancelled.

On August 10, 2017, Samples Construction filed suit against Web IV and Brown, raising claims for breach of contract, quantum meruit, foreclosure on mechanic's lien bond, and attorney fees. Samples Construction expressly reserved the right to arbitrate the suit, demanded arbitration in accordance with the General Conditions, and requested that the suit be stayed pending the outcome of arbitration. Web IV filed an answer and counterclaims, asserting claims of breach of contract, negligent construction, slander of title, and attorney fees against Michael Samples, Pride Electric, Inc., and Devotie Construction Company (the "third-party defendants").

Samples Construction subsequently filed a motion to stay litigation and compel arbitration under the Georgia Arbitration Code, OCGA § 9-9-6. Web IV objected, arguing in pertinent part that Samples Construction waived any right to compel arbitration because the parties never completed the dispute resolution process outlined in Section 10.2 of the General Conditions which, according to Web IV, was a condition precedent to demanding arbitration. Web IV also argued that it had no contractual obligation to arbitrate with Brown or the subcontractors. The trial court ruled in favor of Samples Construction and entered an order staying the lawsuit and compelling arbitration. The trial court then certified its order for immediate review

and we granted Web IV's application for interlocutory appeal. This timely appeal followed.

1. In two related enumerations of error, Web IV contends that the trial court erred in concluding that the threshold question of arbitrability should be decided by the arbitrator rather than by the court. We disagree and conclude that the trial court properly referred this issue to the arbitrator.

The parties' agreement includes a provision that the contract "shall be governed by the laws of the place of the Project" – Georgia – and the motion to compel arbitration was filed pursuant to OCGA § 9-9-6 of the Georgia Arbitration Code ("GAC"). Although the Federal Arbitration Act ("FAA") applies to cases involving interstate commerce, "[s]tate law may apply where parties agree to be bound by state arbitration law, so long as that law does not conflict with the FAA." *North Augusta Assocs. Partnership v. 1815 Exchange*, 220 Ga. App. 790, 792 (1) (469 SE2d 759) (1996). The GAC, like its federal counterpart, reflects "a clear public policy in favor of arbitration." *Iverson*, 300 Ga. App. at 334-335 (1). Further, due to the similarities, we can refer to federal law when interpreting state law. Id. at 335 (1). With this framework in mind, we turn to the parties' specific arguments in this case.

5

(a) Web IV asserts that this case presents a threshold question of substantive arbitrability and contends that, consistent with the general rule, this matter must be resolved by the trial court rather than the arbitrator.

The parties' breach of contract and related claims clearly fall within the scope of the arbitration clause incorporated into the agreement between Samples Construction and Web IV, as that clause provides either party may insist on arbitration to resolve "[a]ny claims, disputes or controversies between the parties arising out of or relating to the Agreement, or the breach thereof[.]" The question, then, is whether the trial court or the arbitrator should decide whether Samples Construction waived its right to compel arbitration by allegedly failing to comply with the dispute resolution procedures listed in Section 10.2 of the General Conditions. We agree with Web IV that this is a "threshold question," but we conclude that it is one of procedural, rather than substantive, arbitrability.

Web IV is correct that gateway issues of substantive arbitrability, such as allegations of "'conduct-based' waiver of arbitration rights," are generally decided by the trial court. *Brown v. RAC Acceptance East, LLC*, 303 Ga. 172, 175 (2) (a) (809 SE2d 801) (2018). On the other hand, "'procedural questions' which grow out of the dispute" are generally for the arbitrator to decide. *Archer W. Constrs., LLC v. Holder*

6

*Constr. Co.*, 325 Ga. App. 169, 175 (3) (751 SE2d 908) (2013) (physical precedent only) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U. S. 79, 84 (II) (123 SCt 588, 154 LEd2d 491) (2002)). Unless the parties explicitly agree otherwise, such procedural matters include disputes as to whether the party seeking to compel arbitration has satisfied any applicable conditions precedent. *Archer*, 325 Ga. App. at 175 (3).

Although Web IV characterizes the question of whether Samples Construction waived its right to arbitration by failing to comply with the dispute resolution procedures set forth in the parties' agreement as a question of conduct-based waiver, it is more accurately described as a procedural question that grows out of the agreement itself. The present case is clearly distinguishable from those that have been described as posing questions of conduct-based waiver. For example, in *Brown*, the plaintiff rented furniture from the defendant. The rental store swore out a warrant for the plaintiff's arrest, alleging that she had failed to make payments as required, and the plaintiff subsequently filed a tort action against the store, raising claims of malicious prosecution, libel, and slander. 303 Ga. at 173 (1). When the store sought to compel arbitration of the tort claims pursuant to the arbitration clause in the parties' furniture-rental agreement, the Georgia Supreme Court concluded that

7

whether the store had waived its right to compel arbitration by swearing out the warrant was an issue of conduct-based waiver, which would normally be resolved by the trial court rather than the arbitrator. Id. at 175-176 (2) (a). The Court further found, however, that the parties in *Brown* had specifically delegated all questions as to the enforceability of their agreement, including the matter presented in that appeal, to the arbitrator. Accordingly, it followed the parties' explicit agreement rather than the general rule and affirmed the trial court's decision to refer the issue to the arbitrator. Id. at 175-177 (2) (a) & (b). See also *Wise v. Tidal*, 261 Ga. App. 670, 674 (2) (583 SE2d 466) (2003) (where plaintiff argued that defendant had waived its right to compel arbitration by engaging in litigation including extensive discovery, a request for summary judgment, and jury selection, before invoking its right to arbitration, a court must resolve the claim of waiver). Similarly, this is not a case where the parties disagree as to whether their contract itself is valid. In *Galindo v. Lanier Worldwide*, 241 Ga. App. 78, 83-84 (2) (b) (526 SE2d 141) (1999), for example, the question of arbitrability was whether the party opposing arbitration ever signed the arbitration agreement. We held that the question was properly for the trial court to decide. See also *Panhandle Fire Protection, Inc. v. Batson Cook Co.*, 288 Ga. App. 194, 198-199 (1) (b) & (c) (653 SE2d 802) (2007) (where party claimed that the

version of the agreement to which the parties mutually assented did not contain an arbitration clause, that question was for the court, not the arbitrator, to resolve). In short, unlike cases where we described the matter as a question of substantive arbitrability, here the threshold question is a procedural matter that grows out of the parties' dispute itself. It is, therefore, for the arbitrator rather than the court to resolve. See *Howsam*, 537 U.S. at 84 (II). See also *John Wiley & Sons, Inc. v. Livingston*, 376 U. S. 543, 555-559 (IV) (84 SCt 909, 11 LE2d 898) (1964).

Additionally, in light of the broad language of the parties' arbitration agreement – that all claims "arising out of or relating to the agreement" will be subject to arbitration – the parties would likely expect an arbitrator to resolve the threshold matter at issue here. See *Howsam*, 537 U. S. at 84 (II). "The words in a contract generally bear their usual and common signification, and . . . Black's Law Dictionary defines the term 'related' as 'standing in relation; connected; allied; akin.'" (Punctuation and footnote omitted). *Penso Holdings, Inc. v. Cleveland*, 324 Ga. App. 259, 262 (749 SE2d 821) (2013) (physical precedent only). The questions of whether the parties' agreement imposed a condition precedent to arbitration and whether Samples Construction waived its right to compel arbitration by failing to

comply with that purported condition precedent clearly arise out of and relate to the parties' agreement. This conclusion is consistent with the principle that

> when the parties to a contract have agreed to submit all questions of contract interpretation to the arbitrator, the function of the court is very limited; it is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. . . . Any dispute between the parties to the contract as to the meaning, interpretation and application of the agreement is for the arbitrators.

(Citations and punctuation omitted). *ADC Constr. Co. v. McDaniel Grading*, 177 Ga. App. 223, 227 (3) (338 SE2d 733) (1985). In *ADC*, the parties' agreement, like the one at issue here, provided for arbitration of "all claims, disputes and other matters in question between the Contractor and the Owner *arising out of, or relating to, the Contract Documents or the breach thereof*." Id. at 223. Therefore, here, as in *ADC*, the parties' dispute as to the meaning of the agreement's dispute resolution provisions is for the arbitrator to resolve. Compare *Bryan County v. Yates Paving & Grading Co.,* 281 Ga. 361, 363 (638 SE2d 302) (2006) (in case applying the GAC, trial court properly determined whether the parties' claims were barred by the doctrine of res judicata, without referring the matter to an arbitrator, because that was not a matter "arising out of or relating to" the parties' agreement); but see *Klay v. United*

10

*Healthgroup*, 376 F3d 1092, 1109 (III) (11th Cir. 2004) (in case applying the FAA, defendant's claim that a second proceeding was barred by res judicata in light of an earlier proceeding was for the arbitrator, not court, to resolve).

Further, we note that the U. S. Court of Appeals for the First Circuit has considered precisely the issue presented in this case, and it determined that the matter must be resolved by the arbitrator. See *Dialysis Access Center v. RMS Lifeline, Inc.*, 638 F3d 367, 383 (IV) (B) (2) (1st Cir. 2011). The agreement at issue in *Dialysis Access* provided that the parties "shall use good faith negotiation to resolve any dispute that may arise under this [a]greement," and that any issue not resolved through negotiations would be settled by arbitration. Id. at 371 (I). The parties disagreed as to whether this provision imposed a pre-condition that they engage in good-faith negotiation before proceeding to arbitration. Id. at 383 (IV) (B) (2). Relying on *Howsam*, 537 U.S. at 84, the First Circuit concluded that the arbitrator, not the court, must determine whether the parties waived their right to arbitration by failing to comply with the alleged pre-condition. Id. at 383 (IV) (B) (2). The contractual language in the case before us is virtually identical to that at issue in *Dialysis Access*. In addition, there is no dispute that here, as in *Dialysis Access*, the parties' grievances (breach of contract and related claims) fall within the scope of

11

their arbitration clause. We find the reasoning in *Dialysis Access* persuasive and conclude that the question of whether one party waived its right to compel arbitration by failing to comply with a purported condition precedent is a question for the arbitrator to resolve. See *Dialysis Access*, 638 F3d at 383 (IV) (B) (2).

Finally, we note that the parties' arbitration clause provides that arbitration shall be conducted "in accordance with the Construction Industry Arbitration Rules of the AAA then in effect," and those rules give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." See *Construction Industry Arbitration Rules and Mediation Procedures*, Rule 9 (a) (American Arb. Assn. 2018) (available at https://www.adr.org/sites/default/files/Construction_ Arbitration_Rules_7May2018.pdf); see also *Doman v. Stapleton*, 256 Ga. App. 383, 390 (2) (568 SE2d 509) (2002) (identical AAA rule in a different type of dispute). The Court of Appeals for the Eleventh Circuit has held that, in light of this AAA rule, "when parties incorporate the rules of the [American Arbitration] Association into their contract, they clearly and unmistakably agree that the arbitrator should decide whether the arbitration clause applies." (Citation and punctuation omitted). *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F3d 1308, 1311 (III) (11th Cir. 2014).

12

Although we are not bound by the Eleventh Circuit's holding, the parties' own reference to these rules is further support for the conclusion that they likely would have expected an arbitrator to resolve the issue presented here.

(b) Next, Web IV contends that under *North Augusta*, 220 Ga. App. at 792 (2), and *Tillman Park, LLC v. Dabbs-Williams Gen. Contractors, LLC*, 298 Ga. App. 27 (679 SE2d 67) (2009), the trial court erred by failing to conclude that Samples Construction waived its right to compel arbitration by failing to complete the dispute resolution procedure outlined in the parties' agreement. We disagree.

The arbitration clause in *North Augusta* is similar to the one at issue here: it provided that "[a]ny controversy or claim arising out of or related to the contract, or the breach thereof, shall be settled by arbitration[.]" 220 Ga. App. at 792 (2). But unlike the contract here, the agreement in *North Augusta* contained other provisions which clearly and unambiguously limited the scope of the arbitration clause: they provided that "claims . . . shall be referred initially to the architect for action," and that "[a] decision by the architect . . . *shall be required as a condition precedent* to arbitration[.]" Id. (emphasis in original). The agreement in the present case does not contain any similarly unambiguous limitations on the scope of the parties' agreement to arbitrate. Although Web IV argues that the dispute resolution provisions in the

13

parties' contract should be interpreted as imposing conditions precedent on their ability to compel arbitration, the contract does not explicitly refer to those procedures as a condition precedent. Under the facts presented in this case, the question of whether the contract's dispute resolution provisions impose a condition precedent to arbitration is, as discussed above, a threshold issue of procedural arbitrability that arises out of and relates to the agreement itself. Accordingly, it should be resolved by the arbitrator rather than by the trial court. See *ADC Constr. Co.*, 177 Ga. App. at 227 (3); *Dialysis Access*, 638 F3d at 383 (IV) (B) (2).

As to *Tillman Park*, the agreement in that case, like in *North Augusta*, provided that claims must be submitted *first* to an architect, and *then*, after that condition precedent was satisfied, the architect's decision could be reviewed through arbitration or litigation. 298 Ga. App. at 28. When the parties failed to name an architect and were, therefore, arguably unable to comply with the first step of the claims-resolution process, the question of arbitrability fell to the court rather than to an arbitrator. But again, under the clear terms of the parties' agreement, the only issues subject to arbitration were those that had already been submitted to the architect. Id. at 30-31. The agreement in this case does not contain any similarly unambiguous limitations

14

on the scope of the parties' agreement to arbitrate. The instant case is, therefore, squarely distinguishable from both *North Augusta* and *Tillman Park*.

Ultimately, for the foregoing reasons, the question of whether Samples Construction waived its right to compel arbitration by failing to follow the dispute resolution procedures listed in the parties' agreement is a threshold question of procedural arbitrability that "aris[es] out of or relat[es] to" that agreement. See *Howsam*, 537 U.S. at 84 (II); *ADC Constr. Co.*, 177 Ga. App. at 227 (3); *Dialysis Access*, 638 F3d at 383 (IV) (B) (2). Thus, it must be resolved by the arbitrator, not by the trial court, and the trial court correctly granted Samples Construction's motion to compel arbitration.

2. Web IV contends that the trial court erroneously granted the motion to compel arbitration as to parties other than Samples Construction because Web IV did not sign an arbitration agreement with those parties and, moreover, because those parties waived any right to compel arbitration by engaging in inconsistent conduct, including discovery. In response to this enumeration of error, Samples Construction argues that Web IV has misconstrued the trial court's order. According to Samples Construction, only Web IV and Samples Construction have been ordered to arbitrate. We find no reversible error.

15

A careful review of the trial court's order reveals that it does not compel the subcontractors, Mr. Brown, or Mr. Samples to engage in arbitration. Although the order identifies Brown as a defendant and the subcontractors as third-party defendants, the text of the order recites that "Plaintiff [Samples Construction] and Defendant, WEB IV, LLC entered into a cost-plus contract" which contained provisions as to termination, dispute avoidance, and arbitration. Id. The order then concludes that the question of arbitrability under that contract is best determined in arbitration. Thus, the trial court's order compels arbitration only as to the parties of the contract described therein – Samples Construction and Web IV. See *Tillman Park*, 298 Ga. App. at 72. And for the reasons discussed above in Division 1 of our opinion, that ruling is correct.

*Judgment affirmed. McFadden, P. J., and Rickman, J., concur.*

16