**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 14, 2013**

# In the Court of Appeals of Georgia

A12A2254. LOSEY v. PRIETO et al.                              DO-104

DOYLE, Presiding Judge.

Edward H. Losey hired Michael A. Prieto, Perrotta, Cahn & Prieto, P.C., Jeffrey H. Schneider, and Weissman, Nowack, Curry & Wilco, P.C., (collectively, "the Attorneys") to represent him in a lawsuit filed against him for specific performance of a real estate contract. After the lawsuit settled and Losey subsequently sold the property at issue, he filed suit against the Attorneys to recover the $1.1 million in fees paid to them pursuant to the parties' engagement agreement. The Attorneys filed a motion to dismiss and to compel arbitration, and the trial court granted both motions. Losey appeals, arguing that the mandatory arbitration provision contained in the engagement agreement was unenforceable. We affirm, for the reasons that follow.

Similar to our review of the grant of summary judgment, which involves the elimination of all genuine issues of material fact, the standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law. In addition, the construction of a contract is a question of law for the court that is subject to de novo review. Where contract language is unambiguous, construction is unnecessary[,] and the court simply enforces the contract according to its clear terms.[1]

Losey contracted to sell 4.85 acres of land on Tybee Island, and he retained the Attorneys to defend him in a subsequent lawsuit for specific performance filed by the prospective buyers. The engagement agreement between the parties (the "Fee Agreement") provided that the Attorneys would be paid a contingency fee of 45 percent "of the gross monetary proceeds from the future sale of the Tybee Island property above $1.5 million. The Fee Agreement also contained an arbitration provision:

> Any dispute arising under this agreement (including the scope of this arbitration provision and its enforceability) will be submitted to arbitration in Atlanta, Georgia, under the rules and procedures of the State Bar of Georgia Committee on the Arbitration of Attorney Fee Disputes, if concerning fees, or to Henning Mediation & Arbitration

---

[1] (Citations and punctuation omitted.) *Moore & Moore Plumbing, Inc. v. Tri-South Contractors, Inc.*, 256 Ga. App. 58, 60-61 (1) (567 SE2d 697) (2002).

2

Services . . . if concerning any other matter. . . . The decision of any such arbitrator or arbitrators shall be binding, conclusive, and not subject to appeal. The cost of any such arbitration shall be split evenly between the parties in dispute.[2]

Losey ultimately settled his claim against the prospective buyers of the Tybee Island property, and he subsequently sold the property to another buyer for $4.25 million, with $2 million due at closing and a $2.4 million future payment consisting of the remaining balance plus interest. The Attorneys were paid 45 percent of the $4.25 million total sales price in excess of $1.5 million.[3] The buyer subsequently defaulted on his obligation to pay Losey the $2.4 million future payment and eventually filed bankruptcy, and Sullivan's obligation to make the future payment to Losey was discharged.[4]

---

[2] The Fee Agreement directed Losey to contact the Attorneys if he had any concerns regarding the terms of the engagement letter, and it contained a provision wherein the parties confirmed that although they "thoroughly discussed the terms of the agreement, [the Attorneys] would recommend that [Losey] have the document reviewed by independent counsel."

[3] Losey also paid an additional $162,048 to Prieto and Perrotta, Cahn & Prieto, P.C., and another $12,500 to Prieto "for unspecified reasons."

[4] In sum, Losey received a total of $2 million from Sullivan, and he paid a total of $1.1 million in fees to the Attorneys.

Losey subsequently filed suit against the Attorneys, asserting claims for breach of contract, conversion, money had and received, and fraud, essentially alleging that the Attorneys were paid, at their insistence, more money in fees than they were entitled to receive under the Fee Agreement. The Attorneys filed motions to dismiss and to compel arbitration on the grounds that arbitration was Losey's sole remedy under the Fee Agreement, and the trial court granted both motions.

On appeal, Losey argues that the trial court erred by granting the Attorneys' motion to compel arbitration because the arbitration provision in the Fee Agreement is unenforceable.[5] This argument provides no basis for reversal, however, because the parties specifically agreed in the Fee Agreement to arbitrate any dispute arising out of the agreement, including the enforceability of the arbitration provision.

---

[5] Specifically, Losey argues that the arbitration provision is unconscionable and evinces a conflict of interest between him and the Attorneys; that the Attorneys failed to fully inform him of the scope and effect of the arbitration provision; that the trial court failed to specify whether the arbitration would be submitted to Henning Mediation or to the Bar Committee, arguing that the Bar Committee could not take jurisdiction of this case under its internal rules; and that the arbitration provision was unenforceable under OCGA § 9-9-2 (c) (7), which prohibits mandatory arbitration provisions in "[a]ny contract involving consumer acts or practices or involving consumer transactions. . . ."

4

In *First Options of Chicago, Inc. v. Kaplan*,[6] the U. S. Supreme Court explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?"[7] "[T]he question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[8]

Here, Losey does not dispute that he entered into the Fee Agreement, which contained a provision wherein the parties agreed to submit all disputes to arbitration,

---

[6] 514 U. S. 938 (115 SC 1920, 131 LE2d 985) (1995).

[7] (Citation and punctuation omitted; emphasis in original.) Id. at 943 (II). The Supreme Court explained that separate standards of review apply to a trial court's review of an arbitrator's decision regarding arbitrability: a "court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances. If, on the other hand, the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently.") Id. (citation omitted; emphasis in original).

[8] *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U. S. 643, 649 (II) (106 SC 1415, 89 LE2d 648) (1986).

specifically including "the scope of this arbitration provision and its enforceability." This language constitutes clear and unmistakable evidence that the parties agreed that the arbitrator would decide the issue of arbitrability. Accordingly, the trial court did not err by compelling the parties to arbitration and dismissing the case.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*