303 Ga. 172
FINAL COPY

S17G1097.  BROWN et al. v. RAC ACCEPTANCE EAST, LLC.

NAHMIAS, Justice.

After RAC Acceptance East, LLC swore out a warrant for Mira Brown's arrest for theft by conversion of furniture that she had rented from RAC, Brown filed a lawsuit against RAC alleging malicious prosecution and other torts.  The trial court entered an order granting RAC's motion to compel Brown to arbitrate her claims pursuant to the arbitration agreement incorporated into the parties' rental agreement.  The Court of Appeals affirmed that order, concluding that whether RAC had waived its right to demand arbitration by its conduct in initiating the related criminal proceeding against Brown was a matter for the court to decide and that the trial court had correctly ruled that RAC did not waive arbitration.  We granted certiorari, and we now affirm the Court of Appeals' judgment on the ground that the delegation provision in the parties' arbitration agreement clearly gave the arbitrator, not the courts, the authority to determine that RAC did not waive by prior litigation conduct its right to seek arbitration, and the arbitrator's decision on the waiver question cannot be

properly challenged as legally erroneous.

1.      The record shows the following undisputed facts.  In January 2012, Brown entered into a rental-purchase agreement with RAC to rent a bedroom set.  The rental agreement incorporated by reference an attached arbitration agreement, which Brown also executed.   The arbitration agreement says:  "Either [Brown] or [RAC] may require any Claim to be arbitrated.  Either [Brown] or [RAC] may do so before or after a lawsuit has been started over the Claim . . . ."  A section of the arbitration agreement titled "What Claims Are Covered" says, with emphasis supplied:

> "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to the Rental-Purchase Agreement or the leased property, except "Claim" does not include any claim or action by either party seeking judicial determination of that party's right to possession of the leased merchandise, provided that such a claim or action does not involve a request for monetary relief of any kind.

> "Claim" has the broadest possible meaning and, except as set forth above, includes initial claims, counterclaims, cross-claims and third-party claims.  It includes disputes based upon contract, tort, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief other than a declaration of a party's right to possession).  *It also includes disputes about the validity, enforceability, arbitrability or scope of this Arbitration Agreement or the Rental-Purchase Agreement.*

Brown did not make all payments required under the rental agreement. Beginning in April 2012, and repeatedly over the course of more than a year, RAC contacted Brown about her payment obligations and the requirement that she return the furniture. In January 2014, RAC submitted an arrest warrant application and affidavit in the magistrate court. The magistrate court scheduled a hearing for January 24, 2014, but Brown did not appear. At the hearing, the magistrate court issued an arrest warrant for theft by conversion. In February 2014, Brown returned the furniture. In June 2014, a police officer stopped Brown while she was driving with her children in the car, found that an arrest warrant for theft by conversion was outstanding, and arrested her. The prosecutor declined to prosecute, citing RAC's decision not to pursue charges because Brown had returned the furniture.

In September 2014, Brown filed a complaint against RAC in the Superior Court of Fulton County (the "trial court"), asserting tort claims for malicious prosecution and arrest, negligent and intentional infliction of emotional distress, invasion of privacy, false imprisonment and arrest, and slander and libel. The complaint alleged among other things that RAC filed an arrest warrant application that falsely accused her of theft by conversion, that RAC told her

3

that it would recall the warrant if she returned the furniture, that she agreed to return the furniture and did so, and that RAC then wrongfully failed to recall the warrant.

RAC filed a motion to stay Brown's lawsuit and compel arbitration, arguing that the parties' arbitration agreement required Brown to arbitrate her claims. Brown objected, arguing among other things that RAC "waived any potential right to arbitration when [it] applied for and obtained a warrant for [her] arrest." In January 2015, the trial court entered an order granting RAC's motion, staying the lawsuit, and compelling arbitration. The court noted that Brown acknowledged the existence of the arbitration agreement and the applicability of the Federal Arbitration Act (FAA), 9 USC § 1 et seq., and concluded that Brown's tort claims against RAC were subject to arbitration under the parties' agreement. The court also noted that the arbitration agreement delegated to the arbitrator the responsibility to resolve "disputes about the validity, enforceability, arbitrability or scope of this Arbitration Agreement" and concluded that "whether the Arrest Warrant [was] a waiver should be decided at arbitration." The court ruled in the alternative that if it were to consider Brown's waiver argument on the merits, it would reject the

argument, distinguishing this Court's decision in Taft v. Burttram, 254 Ga. 687 (333 SE2d 585) (1985).[1] Brown filed a motion for reconsideration and a request for a certificate of immediate review, both of which the trial court denied.

An arbitration hearing was then held under the auspices of the American Arbitration Association. Brown argued among other things that Taft required a finding that RAC had waived its right to demand that she arbitrate her tort claims. In December 2015, the arbitrator ruled that "[w]hile it is a close question, . . . [RAC] did not waive arbitration in this action" by using the criminal warrant procedure. The arbitrator then ruled in favor of RAC on each of Brown's tort claims.

In January 2016, RAC filed a motion in the trial court to confirm the arbitrator's award, and in February the court entered a confirmation order and a final judgment in favor of RAC. Brown then appealed, arguing among other things that the trial court erred in its initial order staying the lawsuit and

---

[1] In Taft, two securities brokers sued their former brokerage firm for malicious prosecution and other torts. The trial court granted the firm's motions to stay the lawsuits pending arbitration based on provisions of the brokers' employment contracts. This Court reversed the stay order, holding that the firm's swearing out of arrest warrants for theft by taking against the brokers, instead of seeking to arbitrate its dispute over alleged misuse of client information, "'was the clearest kind of waiver . . . of an agreement to arbitrate.'" 254 Ga. at 688 (citation omitted).

5

compelling arbitration. In February 2017, the Court of Appeals affirmed in an unpublished opinion, holding that because Brown's waiver argument was based on RAC's alleged litigation conduct, the trial court rather than the arbitrator had the primary power to decide the threshold issue of arbitrability. See Brown v. RAC Acceptance East, LLC, 340 Ga. App. XXV (Case No. A16A1886), slip op. at 5-6 (February 2, 2017) (unpublished). Reviewing that issue de novo, the Court of Appeals upheld the trial court's ruling that RAC had not waived its right to arbitration, again distinguishing Taft. See Brown, slip op. at 6-11. We granted Brown's petition for certiorari, directing the parties to address Taft. We now affirm, but on a different ground as to which Taft is not pertinent.[2]

2. In this Court, Brown does not dispute that she signed the arbitration agreement with RAC, that the FAA governs the agreement, or that the agreement's broad definition of a "Claim" for which either party may demand arbitration encompasses her tort claims against RAC. Instead, citing Taft, Brown contends that she had the right to have her tort claims decided in court because RAC waived its right to enforce the arbitration agreement through its

---

[2] The Court of Appeals also addressed other issues that are not disputed before this Court.

litigation conduct — specifically, by swearing out the warrant for her arrest. RAC disagrees that the decision in Taft applies to this case. Thus, Brown and RAC have a dispute about the enforceability of their arbitration agreement, in addition to their dispute over RAC's liability to Brown on her tort claims.

(a) RAC asserts that pursuant to the parties' arbitration agreement, the dispute about enforceability was properly submitted to arbitration. That is correct. A dispute about the enforceability of an arbitration agreement is a classic "'gateway' question[ ] of 'arbitrability.'" Rent-A-Center, West, Inc. v. Jackson, 561 U. S. 63, 68-69 (130 SCt 2772, 177 LE2d 403) (2010) (citations omitted). See BG Group, PLC v. Republic of Argentina, 572 U. S. ___, ___ (134 SCt 1198, 1206-1208, 188 LE2d 220) (2014) (discussing various gateway, or "threshold," issues of arbitrability). And as the United States Supreme Court explained in First Options of Chicago, Inc. v. Kaplan, 514 U. S. 938 (115 SCt 1920, 131 LE2d 985) (1995), "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." Id. at 943 (emphasis in original).

"Courts should not assume that the parties agreed to arbitrate arbitrability," Kaplan, 514 U. S. at 944, and "'in the absence of an agreement to

7

the contrary, issues of substantive arbitrability . . . are for a court to decide,'" Howsam v. Dean Witter Reynolds, Inc., 537 U. S. 79, 85 (123 SCt 588, 154 LE2d 491) (2002) (citation omitted). Thus, as the Court of Appeals recognized, "[g]enerally, courts decide issues of alleged 'conduct-based' waiver of arbitration rights." Brown, slip op. at 5. However, as the United States Supreme Court has explained but the Court of Appeals here failed to acknowledge, where there is "'clear and unmistakable' evidence that the parties wanted an arbitrator to resolve the dispute" about arbitrability, courts must give effect to the parties' agreement. Oxford Health Plans LLC v. Sutter, 569 U. S. 564, 569 n.2 (133 SCt 2064, 186 LE2d 113) (2013) (citation and punctuation omitted). See also Rent-A-Center, 561 U. S. at 68-70 & n.1; Losey v. Prieto, 320 Ga. App. 390, 392 (739 SE2d 834) (2013).

Arbitration agreements these days often contain what is known in arbitration law as a "delegation provision" — that is, "an agreement to arbitrate threshold issues concerning the arbitration agreement." Rent-A-Center, 561 U. S. at 68. In this case, the delegation provision clearly assigns responsibility for resolving "disputes about the validity, enforceability, arbitrability or scope of this Arbitration Agreement" to the arbitrator. And Brown's conduct-based

8

waiver argument is a direct challenge to the enforceability of the arbitration agreement.

Thus, as the trial court correctly recognized in its order compelling arbitration, the broad delegation provision contained in the parties' arbitration agreement constitutes the clear and unmistakable evidence necessary to displace the usual presumption that the threshold issue of arbitrability should be decided by the court rather than the arbitrator. See, e.g., Rent-A-Center, 561 U. S. at 68-69 & n.1 (holding that an arbitration agreement saying "'[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement'" was a clear and unmistakable delegation of arbitrability); Losey, 320 Ga. App. at 393 (holding that language in a fee agreement's arbitration clause covering disputes about "'the scope of this arbitration provision and its enforceability' . . . constitute[d] clear and unmistakable evidence that the parties agreed that the arbitrator would decide the issue of arbitrability"); Jones v. Waffle House, Inc., 866 F3d 1257, 1267 (11th Cir. 2017) (finding that language similar to that in Brown and RAC's arbitration agreement "clearly and unmistakably evinces the parties' intent to arbitrate all gateway issues").

9

(b)     Brown argues, however, that RAC's alleged conduct-based waiver of its right to enforce the arbitration agreement would render the delegation provision within that agreement unenforceable as well.  The United States Supreme Court rejected this argument in Rent-A-Center.  The Court held that a delegation provision like the one in Brown's arbitration agreement with RAC "is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent-A-Center, 561 U. S. at 70.  The Court further held that a delegation provision is severable from the remainder of an arbitration agreement, because § 2 of the FAA says that "a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." Rent-A-Center, 561 U. S. at 70 (emphasis in original).  Thus, unless a party challenges the delegation provision with an argument that applies particularly to that provision, courts "must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator." Rent-A-Center, 561 U. S. at 72.

10

Brown has not made a waiver-by-conduct argument particular to the delegation provision. Her argument that RAC waived its right to enforce the arbitration agreement as a whole is indistinguishable from her argument that RAC waived its rights under the delegation provision. Cf. Johnson v. KeyBank Nat. Assn. (In re Checking Account Overdraft Litigation), 754 F3d 1290, 1291 (11th Cir. 2014) (addressing an argument that KeyBank waived a delegation clause by waiting too long to invoke it). Thus, "'substantive federal arbitration law'" required the trial court to enforce the delegation provision by staying Brown's lawsuit and compelling arbitration, leaving her challenge to the enforceability of the arbitration agreement as a whole for the arbitrator. Rent-A-Center, 561 U. S. at 70-71 (citation omitted). In sum, the trial court properly compelled arbitration of the threshold issue of whether RAC waived by its conduct its right to enforce the arbitration agreement.

(c)    As RAC points out, Brown did not challenge the arbitrator's ruling rejecting her waiver-by-conduct argument on any ground permissible under the FAA. See 9 USC §§ 10, 11 (listing grounds for vacating or modifying an arbitration award); Hall Street Assoc., LLC v. Mattel, Inc., 552 U. S. 576, 586 (128 SCt 1396, 170 LE2d 254) (2008) (holding that the grounds listed in FAA

11

§§ 10 and 11 are "exclusive"). But even if Brown had challenged the arbitrator's ruling on arbitrability in the way she challenged the rulings on that issue by the trial court and the Court of Appeals, she could not prevail.

Brown's argument would be that the arbitrator erred in his legal conclusion that Taft does not require a finding that RAC waived its right to arbitration of her tort claims. But in Hall Street, a case involving what the primary dissent described as "a rather glaring error of law" by the arbitrator, 552 U. S. at 594 (Stevens, J., dissenting), the United States Supreme Court squarely rejected the argument that the FAA allows courts to conduct "general review for an arbitrator's legal errors" in deciding whether to enforce an arbitration award, id. at 585 (majority opinion). The Supreme Court emphasized that the FAA authorizes a court to vacate an arbitration award only for "egregious departures from the parties' agreed-upon arbitration: 'corruption,' 'fraud,' 'evident partiality,' 'misconduct,' 'misbehavior,' [and] 'exceed[ing] . . . powers,'" and noted that "'[f]raud' and a mistake of law are not cut from the same cloth." Id. at 586 (quoting 9 USC § 10).

Brown did not (and does not) allege that any such "extreme arbitral conduct" infected the arbitrator's award in favor of RAC. Hall Street, 552 U.

12

S. at 586.  See also <u>Oxford Health Plans</u>, 569 U. S. at 568 ("Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" (citation omitted)); <u>USW Local 200 v. Wise Alloys, LLC</u>, 807 F3d 1258, 1272 (11th Cir. 2015) ("'An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish.  Yet, it may not be subject to court interference.'" (citation omitted)).  Accordingly, a challenge to the arbitrator's award based on <u>Taft</u> would fail, regardless of the merits (or lack thereof) of the arbitrator's legal conclusion that <u>Taft</u> did not require a finding that RAC waived its right to enforce the arbitration agreement by swearing out an arrest warrant against Brown.  Under the circumstances of this case, the Court of Appeals had no need to decide if <u>Taft</u> would apply, nor does this Court.[3]

(d)    Thus, the Court of Appeals reached the right result, albeit for the wrong reason, so we affirm the Court of Appeals' judgment upholding the trial court's order staying Brown's lawsuit and compelling arbitration.

<u>Judgment affirmed.  All the Justices concur.</u>

---

[3]  We note that this Court's short opinion in <u>Taft</u> gives no indication that the arbitration agreement at issue there contained a delegation provision like the one in this case.

Decided January 29, 2018 — Reconsideration denied March 5, 2018.

Certiorari to the Court of Appeals of Georgia — 340 Ga. App. XXV.

Mitchell L. Albert III, for appellants.

Taylor English Duma LLP, Matthew R. Rosenkoff, Glianny Fagundo-Toro; Littler Mendelson, Robert F. Friedman, for appellee.