**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 29, 2024**

# In the Court of Appeals of Georgia

A24A0348. MILLIKEN v. C. MERRILL CONSTRUCTION, LLC.

BROWN, Judge.

Jeff Milliken ("the owner") appeals from the trial court's entry of a final money judgment of $100,827.96 in favor of C. Merrill Construction, LLC ("the contractor") following his confession of judgment. The owner contends that the trial court erred in denying his motion to compel arbitration and to dismiss, in granting the contractor's motion to stay arbitration, in its rulings on discovery, and in granting attorney fees to the contractor. For the reasons explained below, we affirm the trial court's denial of the owner's motion to dismiss, reverse the trial court's denial of the owner's motion to compel arbitration and its grant of the contractor's motion to stay

arbitration, vacate the trial court's discovery orders and final judgment, and remand with direction for the trial court to order the parties to submit to arbitration.

The record shows that on January 6, 2021, the parties entered into a construction contract that included a dispute resolution provision. On October 7, 2022, the contractor filed suit alleging the owner breached the contract by failing to pay over $48,000 in outstanding invoices, $5,225.58 owed on an open account for repairs performed for the owner at a different restaurant location, $8,441 owed on an open account for HVAC repairs, and interest on these amounts. In addition to its breach of contract and open account claims, the contractor sought damages based upon unjust enrichment, quantum meruit, as well as a writ of attachment on restaurant equipment listed for sale and attorney fees, litigation expenses, and costs. The complaint was served on October 21, 2022, and the owner filed an answer on November 16, 2022, denying liability; the owner did not raise arbitration as a defense to the lawsuit.

On January 5, 2023, the owner moved the trial court to dismiss the lawsuit and compel arbitration. According to the owner's motion, the contractor failed to make a demand for arbitration under the contract and brought litigation in violation of the

contract terms. The contractor opposed the motion and requested a stay of arbitration under OCGA § 9-9-6 (b), arguing that the owner waived his right to arbitration, failed to comply with the agreement to arbitrate by ignoring the contractor's pre-suit request for mediation and demand for arbitration, and that not all of the claims asserted in the complaint were subject to arbitration.

On February 6, 2023, the trial court scheduled a hearing for March 6, 2023, on the owner's motion to dismiss and compel arbitration. The following day, however, the trial court issued a short order denying the motion based upon its consideration of the written submissions of both parties. It subsequently denied the owner's request for a certificate of immediate review.

On March 17, 2023, the owner filed a verified "Confession of Judgment" in which he authorized "the clerk of the superior court" to enter "judgment for $69,009.55." The document recites that the owner "desires to confess judgment . . . to settle all claims made or that could have been made by [the contractor]" in the pending lawsuit. On April 6, 2023, the owner paid $69,009.55 into the registry of the clerk of court.

On May 8, 2023, the contractor filed a motion for attorney fees under OCGA § 9-15-14 and OCGA § 13-6-11. Following the filing of an opposition brief by the owner and a hearing held on July 10, 2023, the trial court entered a judgment, as later amended to correct a minor mathematical error, in the total amount of $100,827.96, based upon the confessed judgment amount of $69,009.55, prejudgment interest of $11,317.74, and a $27,431.84 award of attorney fees and expenses under OCGA § 9-15-14 (b) and OCGA § 13-6-11.

1. The owner asserts that the trial court erred in denying his motion to dismiss and compel arbitration and in granting the contractor's motion to stay arbitration, contending that he did not waive his right to arbitration after the contractor filed suit, did not fail to comply with conditions precedent for arbitration, and that all of the claims in the contractor's complaint should be submitted to the arbitrator. As outlined below, the trial court should have ordered the parties to submit to arbitration.

"This Court reviews the grant or denial of a motion to compel arbitration de novo to see if the trial court's decision is correct as a matter of law; but we defer to the trial court's factual findings unless they are clearly erroneous." *Emory Healthcare v. Farrell*, 359 Ga. App. 621, 622 (859 SE2d 576) (2021). "The Federal Arbitration Act

("FAA") applies in state and federal courts to all contracts containing an arbitration clause that involves or affects interstate commerce. When the FAA applies, as it does here, it must be applied using federal substantive law." (Citations and punctuation omitted.) *SunTrust Bank v. Lilliston*, 302 Ga. 840, 842 (809 SE2d 819) (2018). As a preliminary matter, we must determine whether the trial court or the arbitrator should have determined the issues of waiver, compliance with conditions precedent, and whether all of the claims asserted in the complaint are subject to arbitration. See generally *Brown v. RAC Acceptance East*, 303 Ga. 172, 174-177 (2) (a)-(b) (809 SE2d 801) (2018).

(a) *Conduct-based waiver.* In general, "courts decide issues of alleged conduct-based waiver of arbitration rights[,] . . . but . . . where there is clear and unmistakable evidence that the parties wanted an arbitrator to resolve the dispute about arbitrability, courts must give effect to the parties' agreement." (Citations and punctuation omitted.) *Brown*, 303 Ga. at 175 (2) (a). Accordingly, the Supreme Court of Georgia has previously held that contract language assigning the "responsibility for resolving 'disputes about the validity, enforceability, arbitrability or scope of this Arbitration Agreement' to the arbitrator" provides clear and unmistakable evidence that the

arbitrator should decide the issue of conduct-based waiver. Id. at 175-176 (2) (a). More specifically, the Supreme Court concluded that the appellant's "conduct-based waiver argument is a direct challenge to the *enforceability* of the arbitration agreement." (Emphasis supplied.) Id. at 176 (2) (a).

In this case, the parties' arbitration agreement does not assign responsibility for resolving disputes involving enforceability to the arbitrator; we must therefore examine the particular contract language before us for any clear and unmistakable intent for the arbitrator to decide the issue of conduct-based waiver. The front page of the contract states that "AIA Document A201-2017, General Conditions of the Contract for Construction, is adopted in this document by reference." The contract further provides:

> **ARTICLE 6 DISPUTE RESOLUTION**
> **§ 6.1 Initial Decision Maker**
> The Architect will serve as the Initial Decision Maker pursuant to Article 15 of AIA Document A201-2017, unless the parties appoint below another individual not a party to the Agreement to serve as the Initial Decision Maker. . . .[1]

---

[1] The parties did not agree that a person other than the Architect would serve as the Initial Decision Maker.

**§ 6.2 Binding Dispute Resolution**

For any Claim subject to, but not resolved by mediation pursuant to Article 15 of AIA Document A201-2017, the method of binding dispute resolution shall be . . . Arbitration pursuant to Section 15.4 of AIA Document A201-2017.[2]

Section 15.4.1 of the AIA Document A201-2017 provides:

> If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association ["AAA"] in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement.

While these rules do not appear in the record before us, we may take judicial notice of them. See *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 120 (2), n.11 (746 SE2d 680) (2013). The AAA's Construction Industry Arbitration Rules and Mediation Procedures, effective July 1, 2015,[3] contain the following relevant provisions:

**R-1. Agreement of Parties and Designation of Applicable AAA Rules**

---

[2] An option for "[l]itigation in a court of competent jurisdiction" was not selected by the parties.

[3] The next version of the Construction Industry Arbitration Rules and Mediation Procedures became effective on March 1, 2024. See adr.org/construction.

(a) The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] under its Construction Industry Arbitration Rules. . . .

**R-8. Interpretation and Application of Rules**

The arbitrator shall interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties. . . .

**R-9. Jurisdiction**

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.

. . .

**R-54. Applications to Court and Exclusion of Liability**

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(i) While no Georgia courts have decided whether these provisions of the AAA Construction Industry Arbitration Rules and Mediation Procedures provide evidence of a clear and unmistakable intent for the arbitrator to decide the issue of whether a party has waived the right to arbitration through its conduct, other jurisdictions considering the language at issue have concluded that it does not. See, e.g., *Plaintiffs' Shareholders Corp. v. Southern Farm Bureau Life Ins. Co.*, 486 Fed. Appx. 786, 789-790 (II) (A) (11th Cir. 2012) (rejecting argument that arbitrator should decide issue of

conduct-based waiver based on AAA rule stating that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"); *In re S&R Co. of Kingston v. Latona Trucking*, 159 F3d 80, 85-86 (III) (2nd Cir. 1998) (court not precluded from finding that a party waived arbitration by actively participating in litigation by AAA Rule stating "[n]o judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate"). As the Fifth Circuit Court of Appeals observed, "[t]he fact that language in an arbitration agreement is broad enough to cover a particular issue does not mean the language is clear and unmistakable." *Intl. Energy Ventures Mgmt. v. United Energy Group*, 999 F3d 257, 264 (II) (B) (5th Cir. 2021). Having reviewed the relevant AAA rules and the reasoning of other jurisdictions, we conclude that the record before us lacks the clear and unmistakable evidence to displace the usual presumption that a court will decide conduct-based waiver of arbitration rights.

(ii) We now turn to our de novo review of whether the trial court's denial of the owner's motion to compel arbitration can be affirmed based upon a finding that the owner waived his right to arbitration by his conduct in the litigation.

[A] party may, by its conduct, waive its right to arbitration. Thus, a party that *substantially* invokes the litigation machinery *prior to* demanding arbitration may waive its right to arbitrate. A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right. . . .

(Citation and punctuation omitted; emphasis supplied.) *SunTrust Bank*, 302 Ga. at 842-843.[4] Georgia courts have concluded that engaging in the following conduct *before* demanding arbitration in pending litigation is inconsistent with the arbitration right: engaging in extensive discovery;[5] filing a motion for summary judgment;[6] participating

---

[4] In *Morgan v. Sundance, Inc.*, 596 U. S. 411 (142 SCt 1708, 212 LE2d 753) (2022), the United States Supreme Court held that the Federal Arbitration Act does not require a party claiming waiver to prove "prejudice." 596 U. S. at 416-419 (II). Compare *Suntrust Bank*, 302 Ga. at 843 (including prejudice to the other party in its determination of whether a party has waived its right to arbitrate under the totality of the circumstances). As we agree with the parties that this is a case involving interstate commerce governed by the FAA, we will not examine prejudice in this case. See generally *Wise v. Tidal Const. Co.*, 261 Ga. App. 670, 673 (1) (583 SE2d 466) (2003) (when "a transaction involves commerce, . . . the state law and policy . . . must yield to the paramount federal law"; "construction generally involves interstate commerce, because most building materials pass in interstate commerce").

[5] *Wise*, 261 Ga. App. at 674 (2).

[6] Id.

in a pre-trial order,[7] attending trial calendars,[8] selecting a jury;[9] seeking arbitration after discovery is complete and the discovery period is over;[10] extending the time within which to respond and responding to discovery;[11] opposing a motion on the merits;[12] filing leaves of absence and motions for pro hac vice admissions;[13] and waiting for the opposing party's responses to written discovery requests before demanding arbitration.[14] On the other hand, we have found a party does not act inconsistently with its right to arbitration when it "only actively engaged the litigation process after [its] motions [to compel arbitration] were denied." *Langfitt v. Jackson*,

---

[7] Id.

[8] Id.

[9] Id.

[10] *Phil Wooden Homes v. Ladwig*, 262 Ga. App. 792, 793 (586 SE2d 697) (2003).

[11] *USA Payday Cash Advance Center #1 v. Evans*, 281 Ga. App. 847, 850-851 (637 SE2d 418) (2006).

[12] Id.

[13] Id.

[14] *Ed Voyles Jeep-Chrysler v. Wahls*, 294 Ga. App. 876, 878-879 (670 SE2d 540) (2008).

284 Ga. App. 628, 633 (1) (644 SE2d 460) (2007) (reversing trial court's denial of motion to compel arbitration).

In our examination of whether a party has waived its right to arbitration, it is important to keep in mind that we must apply a totality of the circumstances test and that the existence or nonexistence of an individual instance of conduct examined in our prior cases is not outcome determinative. "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case." (Citation and punctuation omitted.) *USA Payday Cash Advance Center #1 v. Evans*, 281 Ga. App. 847, 850 (637 SE2d 418) (2006). "Where, as here, the concern is whether the undisputed facts of [a defendant's] pretrial participation in the litigation satisfy the standard for waiver, the question of waiver of arbitration is one of law." *Rush v. Oppenheimer & Co.*, 779 F2d 885, 887 (2nd Cir. 1985).

The record shows that the owner filed an answer on November 16, 2022, denying liability and raising affirmative defenses other than a right to arbitration. On December 16, 2022, the contractor's attorney sent a letter by mail and e-mail to the owner's attorney alleging that his response to discovery requests (interrogatories, requests to produce, and requests for admissions) that were served

contemporaneously with the complaint were overdue. The owner's counsel immediately responded by e-mail that he had not received the discovery with the complaint provided to him by the owner and asked the contractor's attorney to send the discovery requests "and allow me sufficient time to review and draft responses."

On December 19, 2022, the contractor's counsel provided the discovery requests to the owner's attorney by e-mail, as well as information showing that the discovery had been served on the owner's wife at their place of residence. He stated that his good faith attempt to resolve a discovery dispute had requested the responses be provided by Tuesday, December 27, 2022 (the day after the observed holiday for Christmas in 2022), and inquired about the amount of time needed to fully respond to the discovery. On Tuesday, January 3, 2023, the owner's attorney responded by e-mail that he had not received a response to his request for a reasonable amount of time to respond to discovery and was "proceeding as if [the contractor's attorney] has granted [it]." In the same e-mail, the owner's attorney asked for consent "to a Confidentiality Order" because the contractor was seeking "confidential Tax records, personal financial statements and other documents that should not become part of the public record unless necessary to the litigation." The parties then exchanged e-mails

on January 4, 2023, outlining their disagreement about service of the discovery with the complaint and a discussion of the terms of a proposed Confidentiality and Non-Disclosure Order. In these discussions, the contractor's attorney took the position that all objections to the discovery had been waived and stated an intent to file a motion to compel if the owner asserted objections to the discovery. On January 5, 2023, the owner filed his demand for arbitration and motion to dismiss the lawsuit.

Following his demand for arbitration, the owner provided written responses to discovery on January 6, 2023. On January 19, 2023, six days after the Consent Confidentiality and Non-Disclosure Order was entered on January 13, 2023, the owner produced documents to the contractor. On January 20, 2023, the contractor served requests for production of documents to a law firm and a bank, which the owner sought to quash on February 2, 2023, based in part upon its pending demand for arbitration. On January 30, 2023, shortly before seeking to quash the contractor's request for production of documents to a nonparty, the owner served his own written discovery requests on the contractor. On February 7, 2023, the trial court denied the owner's motion to compel arbitration. After the trial court denied the owner's petition

for a certificate of immediate review, the contractor provided written discovery responses to the owner.

Having reviewed the totality of the procedural history of this case, we decline to find that the owner waived his right to arbitration by his conduct after suit was filed against him. The owner did not engage in substantial discovery before demanding arbitration and his conduct is "less accurately characterized as active litigation than as an effort to protect [his] position." (Citations and punctuation omitted.) *Banq, Inc. v. Purcell*, Case No. 2:22-cv-00773-APG-VCF, 2023 U. S. Dist. LEXIS 7494 at *5 (I) (A) (2) (D. Nev. January 14, 2023). As another jurisdiction has observed, "not every foray into the courthouse effects a waiver of the right to arbitrate, and actions undertaken by a party against whom the waiver would operate that are merely defensive will be considered consistent with an assertion of the right to arbitrate." (Citations and punctuation omitted.) *Stark v. Molod Spitz DeSantis & Stark, P. C.*, 29 A3d 481, 484 (N.Y. App. Div. 2006), reversed on other grounds, *Stark v. Molod Spitz DeSantis & Stark, P. C.*, 876 NE2d 903 (NY 2007).[15]

---

[15] The contractor asserts that the owner's conduct *after* he moved to compel arbitration also demonstrates a waiver. We decline to find, based on the particular facts and circumstances of this case, that the owner's conduct after moving to compel arbitration resulted in a waiver.

(b) *Conditions precedent to arbitration.* As an alternative ground to affirm the trial court's denial of the motion to compel arbitration and the grant of its request for a stay, the contractor asserts that mediation was a condition precedent to binding arbitration, and the owner cannot seek to enforce the arbitration provision of the contract when he failed to attend a scheduled mediation. The owner asserts that he failed to receive proper notification of any such mediation or a demand therefore. We cannot consider the merits of this claim, however, as "the question of whether one party waived its right to compel arbitration by failing to comply with a purported condition precedent is for the arbitrator to resolve," *Web IV, LLC v. Samples Constr. Co.*, 349 Ga. App. 607, 612 (1) (a) (824 SE2d 107) (2019), based on the contract language outlined above giving the arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." See *Graddy v. Carnegie Academy*, Case No. 2:22-cv-00222-DBB-CMR, 2024 U. S. Dist. LEXIS 27487 at *12-13 (B) (D. Utah February 15, 2024); *Pinnacle Design/Build Group v. Kelchner, Inc.*, 490 FSupp3d 1257, 1262-1265

(III) (S.D. Ohio 2020).[16] Accordingly, it provides no basis to affirm the trial court's denial of the owner's motion to compel arbitration.

(c) *Arbitrability of Open Account Claims.* The owner asserts that all of the claims asserted against him are subject to arbitration, while the contractor asserts that the facts of the complaint demonstrate that its open account claims are not subject to arbitration. Once again, this issue is not for the courts to determine. While the parties agreed to arbitrate "disputes and matters in question between the Owner and Contractor *arising out of or relating to* the Contract[,]" (emphasis supplied), they also agreed that the arbitrator "shall have *the* power to rule on his or her own jurisdiction, including any objections with respect to the . . . *scope* . . . of the arbitration agreement." (Emphasis supplied.) AAA Rule R-9. As the Supreme Court of Texas recently explained after a thorough analysis of nationwide law, "the fact that the parties' arbitration agreement may cover only some disputes while carving out others does not affect the fact that the delegation agreement clearly and unmistakenly requires the arbitrator to decide whether the present disputes must be resolved through

---

[16] The Eleventh Circuit's decision in *Kemiron Atlantic, Inc. v. Aguakem Intl.*, 290 F3d 1287 (11th Cir. 2002), cited by the contractor in its brief, does not require a different result as that case did not address the arbitrator's jurisdiction to decide the question.

arbitration." *TotalEnergies E&P USA v. MP Gulf of Mexico*, 667 SW3d 695, 719 (III) (2023). After reviewing the parties' agreement in this case, we conclude that it clearly and unmistakenly provides that the arbitrator must decide whether all of the claims asserted by the contractor fall within the scope of the parties' arbitration agreement. Cf. *Brown*, 303 Ga. at 175-176 (2) (a).

(d) Having addressed each of the arguments related to the propriety of the trial court's decision to deny the owner's motion to compel arbitration and grant the contractor's motion to stay arbitration, we reverse both of these orders and remand this case with direction for the trial court to compel the parties to submit to arbitration. We affirm the portion of the trial court's order denying the owner's motion to dismiss. See OCGA § 9-9-6 (a) ("If the application [to compel arbitration] is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.").

2. Based on our holding in Division 1, we vacate the trial court's orders entering a final judgment, granting the contractor's motion to compel discovery, and denying the owner's motions to quash discovery. See *Clark v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 924 F2d 550, 556 (II) (B) (4th Cir. 1991) (vacating judgment entered after trial because trial court erred in denying motion to compel arbitration).

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Dillard, P. J., and Padgett, J., concur.*