**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 2, 2022**

# In the Court of Appeals of Georgia

A22A1149. WELLS FARGO CLEARING SERVICES, LLC et al.
v. LEGGETT et al.

MERCIER, Judge.

Alleging that their investments had been mismanaged, Brian Leggett and Bryson Holdings, LLC (collectively, "the investors") filed an arbitration claim against Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors, LLC and Wells Fargo broker Jay Windsor Pickett, III (collectively, "Wells Fargo") before the Financial Industry Regulatory Authority ("FINRA").[1] A three-judge panel of FINRA arbitrators denied the claim and ordered Leggett to pay various costs and fees associated with the arbitration. The investors subsequently petitioned the superior

---

[1] FINRA "is a government-authorized not-for-profit organization that oversees U.S. broker-dealers." https://www.finra.org/about.

court to vacate the arbitration award. The superior court granted the petition, and Wells Fargo appeals. For reasons that follow, we reverse.

This dispute arose after the investors allegedly lost over $1,000,000 between 2015 and 2016 on securities managed at different times by Pickett and Jacob McKelvey, another Wells Fargo broker. The parties' investment relationship was governed by a Wells Fargo client agreement that required arbitration of any dispute before a FINRA arbitration panel. The agreement further provided — and the parties do not question — that such arbitration would proceed pursuant to the Federal Arbitration Act, 9 USC § 1 et seq. ("FAA"). See also *American Gen. Financial Svcs. v. Jape*, 291 Ga. 637, 638 (1) (732 SE2d 746) (2012) ("The FAA applies in state and federal courts to all contracts containing an arbitration clause that involves or affects interstate commerce.").

In April 2017, the investors filed a claim for arbitration with FINRA, asserting, among other things, that Wells Fargo failed to properly train and supervise its brokers, who had mismanaged the investors' accounts. The arbitration hearing was conducted over nine days, four in September 2018, followed by five in June 2019. After receiving testimony from numerous witnesses and reviewing thousands of pages of exhibits, the arbitration panel denied the investors' claims, assessed hearing

2

fees against investor Leggett, and ordered Leggett to reimburse Wells Fargo for $51,000 in costs. In particular, the panel concluded:

> Upon consideration of the full record of evidence, including documents and testimony, the Panel finds that the claims asserted by [the investors] against Respondent Pickett, and the allegations concerning Non-Party McKelvey . . . are without merit and false. Specifically, the Panel finds that the losses sustained by the [investors] were solely caused by the trading strategy devised, implemented and undertaken by Claimant Leggett. None of [the investors'] alleged losses were caused by Respondent Pickett's and/or Non-Party McKelvey's action, inaction, or advice. The Panel finds that neither Respondent Pickett nor Non-Party McKelvey engaged in any wrongful conduct. Claimant Leggett alleges that he was misled by both Respondent Pickett and Non-Party McKelvey. The Panel finds that neither Respondent Pickett nor Non-Party McKelvey misled Claimant Leggett in any way, and that these allegations are without merit and false. Claimant Leggett's testimony as to these issues was not credible.

The investors petitioned the superior court to vacate the arbitration award, and Wells Fargo moved to confirm it. Because the FAA "imposes a heavy presumption in favor of confirming arbitration awards . . . confirmation of an arbitration award is usually routine or summary." *Cat Charter, LLC v. Schurtenberger*, 646 F3d 836, 842

3

(II) (A) (11th Cir. 2011) (citation and punctuation omitted);[2] see also 9 USC § 9 (arbitration award must be confirmed unless vacated, modified, or corrected under specific provisions of the FAA). A trial court may not vacate an award absent "very unusual circumstances" involving "corruption, fraud, evident partiality, misconduct, misbehavior, [or] exceed[ed] powers." *Brown v. RAC Acceptance East, LLC*, 303 Ga. 172, 177 (2) (c) (809 SE2d 801) (2018) (citations and punctuation omitted). More specifically, the FAA authorizes a court to vacate an arbitration decision:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

---

[2] "[D]ecisions of the federal courts applying federal law are not binding on a Georgia appellate court, but their reasoning is persuasive." *Archer Western Contractors v. Holder Constr. Co.*, 325 Ga. App. 169, 175 (3) (751 SE2d 908) (2013) (physical precedent only) (citation and punctuation omitted).

4

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 USC § 10 (a).

Relying on 9 USC § 10 (a) (1), (3) and (4), the superior court vacated the arbitration award, finding that: (1) FINRA and the arbitrators overstepped their authority in selecting the arbitration panel; (2) the arbitrators engaged in misconduct by refusing to postpone the arbitration hearing after the investors requested a continuance; (3) the arbitrators engaged in misconduct by refusing to hear certain evidence and limiting the investors' cross-examination of a Wells Fargo witness; (4) the award was procured by fraud; and (5) the arbitrators improperly assessed Leggett with payment of costs and fees. On appeal, we review the superior court's conclusions of law de novo and its factual findings for clear error. See *EGI-VSR, LLC v. Coderch*, 963 F3d 1112, 1121 (III) (11th Cir. 2020); see also *Wells v. Wells-Wilson*, 360 Ga. App. 646, 648 (860 SE2d 185) (2021).

1. Pursuant to FINRA's Code of Arbitration Procedure for Customer Disputes ("the Code"),[3] parties choose a three-judge arbitration panel by striking and ranking arbitrators from a list randomly generated by a computer program known as the "Neutral List Selection System." See FINRA Rule 12403; see also FINRA Rule 12400 (a) (describing the Neutral List Selection System). The Code imposes a continuing duty on arbitrators to disclose "any circumstance which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding," and it sets forth a procedure for arbitrator recusal. FINRA Rule 12405 (a) & (b); FINRA Rule 12406. The Code also permits the Director of FINRA Dispute Resolution Services ("the Director") to remove an arbitrator for cause before an arbitration hearing commences:

> Before the first hearing session begins, the Director may remove an arbitrator for conflict of interest or bias, either upon request of a party or on the Director's own initiative.

> (1) The Director will grant a party's request to remove an arbitrator if it is reasonable to infer, based on information known at the time of the request, that the arbitrator is biased, lacks impartiality, or has

---

[3] The Code of Arbitration Procedure for Customer Disputes can be found at https://www.finra.org/rules-guidance/rulebooks/finra-rules/12000.

a direct or indirect interest in the outcome of the arbitration. The interest or bias must be definite and capable of reasonable demonstration, rather than remote or speculative. Close questions regarding challenges to an arbitrator by a customer under this rule will be resolved in favor of the customer.

(2) The Director must first notify the parties before removing an arbitrator on the Director's own initiative. The Director may not remove the arbitrator if the parties agree in writing to retain the arbitrator within five days of receiving notice of the Director's intent to remove the arbitrator.

FINRA Rule 12407 (a). See also FINRA Rule 12100 (m) (full title of "Director").

(a) The record shows that after FINRA provided the parties with a computer-generated list of arbitrators for the selection process, Wells Fargo requested that the Director remove arbitrator Fred Pinckney from the list. Wells Fargo asserted that a serious and very public personal conflict had arisen between Wells Fargo counsel Terry Weiss and Pinckney during a prior arbitration (the *Postell* arbitration), in which Weiss challenged the conduct of Pinckney and the other *Postell* arbitrators. Claiming that it was unlikely to receive fair and impartial treatment from Pinckney, Wells Fargo asked that Pinckney be removed from the list for cause and replaced by another arbitrator for the parties to consider and rank. When the investors objected to Wells

7

Fargo's request, Weiss responded: "It [has been] made clear to me verbally that none of the *Postell* arbitrators would have the opportunity to serve on any one of my cases given the horrific circumstances surrounding the [*Postell*] case, the SEC investigation, the publicity and the aftermath. It was a most unusual set of circumstances." The Director granted Wells Fargo's request and removed Pinckney from the pool.

In their petition to vacate the award, the investors argued that Wells Fargo improperly "manipulated" the FINRA arbitrator selection system by having Pinckney removed without using a strike. They further claimed that the incident "disclosed a secret agreement between FINRA and [Weiss] pertaining to the pool of arbitrators available to his clients in all of his cases." The superior court adopted these arguments, concluding that Wells Fargo manipulated the pool and that the arbitrators acted outside of their authority by proceeding without a fully neutral panel selected pursuant to FINRA's rules.

We disagree. Nothing indicates that Wells Fargo "manipulated" the arbitrator pool. It simply asked that Pinckney be removed under FINRA Rule 12407. We fail to see how the Director's decision to grant that request — which was made after all parties had a chance to address the issue — constituted manipulation by Wells Fargo.

8

Although the investors claim that a "secret agreement" existed between FINRA and Weiss to automatically exclude the *Postell* arbitrators from any arbitrator list generated on a case involving Weiss, there is no evidence that such agreement was at play here, given Pinckney's inclusion on the initial list. Even if an agreement exists, the investors have not shown that it impacted this arbitration.

The Code vests the Director with discretion to "make any decision that is consistent with the purposes of the Code to facilitate the appointment of arbitrators and the resolution of arbitrations," FINRA Rule 12408, and Rule 12407 (a) explicitly allows the Director to remove an arbitrator for cause. On appeal, the investors claim that the Director can only dismiss an arbitrator from an appointed panel, not from the arbitrator list used to select the panel. But nothing in the text of FINRA's rules supports that conclusion. Rule 12407 (a) authorizes removal of "an arbitrator" for conflict of interest or bias "[b]efore the first hearing session begins." FINRA Rule 12407 (a). The procedures for selecting a panel refer to individuals on the selection list as "arbitrators." FINRA Rule 12403. And the selection process reflects FINRA's desire to avoid conflicts of interest and bias among the listed arbitrators. See FINRA Rule 12403 (a) (3) ("The Neutral List Selection System will exclude arbitrators from

9

the lists based upon current conflicts of interest identified within the Neutral List Selection System.").

The Director concluded that he had discretion to remove an arbitrator from the selection list pursuant to Rule 12407 (a). Given the text of the rule, we cannot find that he exceeded his authority in making that determination. See *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Intl. Gmbh*, 921 F3d 1291, 1304 (III) (B) (11th Cir. 2019) (arbitration "tribunal did not exceed its power by reasonably construing its own rules"); see also *Grand Canyon Ed. v. Ward*, 358 Ga. App. 412, 417 (855 SE2d 415) (2021) ("A regulation should be construed to give effect to the natural and plain meaning of its words. In addition, we look to the stated purpose of the regulation, as well as the broader regulatory . . . context of which it is a part.") (citation and punctuation omitted).

Similarly, in light of the information provided regarding the past history between Pinckney and counsel for Wells Fargo, we cannot find that the Director abused his discretion in inferring that Pinckney had a clear and definite bias here. Neither the Director nor any arbitrator exceeded his or her authority by removing Pinckney from the selection list and proceeding with the arbitration. See FINRA Rule 12407 (a); *Peco Foods Inc. v. Retail Wholesale & Dept. Store Union Mid-South*

10

*Council*, 727 Fed. Appx. 604, 609 (II) (B) (11th Cir. 2018) (arbitrator did not exceed his authority by acting within broad discretion to resolve arbitration issue); *Davis v. Producers Agricultural Ins. Co.*, 762 F3d 1276, 1286 (II) (C) (1) (11th Cir. 2014) (same).

(b) Following Pinckney's removal, the parties selected a three-arbitrator panel that included Kenneth Canfield. Wells Fargo subsequently requested that the Director remove Canfield from the panel or that Canfield recuse himself, asserting as follows:

> After the parties submitted their rankings and striking of arbitrators to FINRA on July 27, 2017, Mr. Canfield's law firm . . . of which Mr. Canfield is a named partner, filed a lawsuit in Fulton County Superior Court, seeking a recovery of damages against Respondent Wells Fargo Advisors, styled *Hubbard v. Wells Fargo Advisors. . . .* On the face of the Complaint it appears that the *Hubbard* matter has no direct connection factually to [this] case. Moreover, Mr. Canfield is not a signatory to the *Hubbard* Complaint and we do not know if he is working on this other case or even if he has knowledge about it. The problem right now is that presumably he, as a partner in his law firm, has a beneficial interest in a matter adverse to Respondent Wells Fargo Advisors. That fact alone presents a sufficient basis to conclude there is a conflict that should require Mr. Canfield's removal or recusal.

The investors objected to the request, but the Director removed Canfield and appointed a replacement arbitrator. In vacating the arbitration award, the superior

11

court found that Canfield's removal violated FINRA's rules because Wells Fargo knew prior to initially selecting Canfield that his law firm represented plaintiffs in cases against financial institutions. The court thus concluded that the *Hubbard* case "did not create any newly disclosed interest or bias against Wells Fargo." Again, however, the Director has discretion in determining whether an arbitrator should be removed. See FINRA Rule 12408. And the Director may grant a request to remove an arbitrator before the arbitration hearing "if it is reasonable to infer, based on information known at the time of the request," that the arbitrator is biased or has a conflict of interest. FINRA Rule 12407 (a). The interest or bias at issue cannot be "remote or speculative." Id. But Wells Fargo pointed to a specific new development — the filing of the *Hubbard* complaint — to raise concerns about Canfield's impartiality.

The superior court did not deem this new development worthy of Canfield's removal. We cannot conclude, however, that the Director abused his discretion by reaching the opposite result and finding, based on the available information, a reasonable inference of bias or conflicted interest. See generally *Johnson v. Directory Assistants Inc*., 797 F3d 1294, 1302 (III) (D) (11th Cir. 2015) ("mere disagreement with an arbitrator's legal or factual determinations does not justify vacatur under §

12

10 (a) (4)"). It follows that the Director and other arbitrators did not act outside of their authority in dismissing Canfield and moving forward without him. See *Peco Foods Inc.*, supra; *Davis*, supra.

2. Wells Fargo argues that the superior court improperly found the arbitrators guilty of misconduct in failing to continue the September 2018 arbitration proceedings. We agree.

An arbitration award entered under the FAA may be vacated if "the arbitrators were guilty of misconduct in refusing to postpone the hearing." 9 USC § 10 (a) (3). A party moving to the vacate an award on this ground, however, "must show that there was no reasonable basis for the [arbitrators'] refusal to postpone the hearing." *CM South East Texas Houston, LLC v. CareMinders Home Care, Inc.*, 662 Fed. Appx. 701, 704 (II) (11th Cir. 2016). In addressing the reasonableness of the arbitrators' decision, "we are mindful of federal policy favoring the 'expeditious handling' of arbitration cases, and also that a rescheduled hearing would have to not only 'meet the convenience of both parties and their witnesses,' but the convenience of the arbitrator[s] as well." Id. (citation and punctuation omitted). Moreover, a court may "vacate an award on these grounds only if the arbitrator[s'] choice prejudiced the

13

rights of the parties and denied them a fair hearing." Id. (citation and punctuation omitted).

The FINRA rules require parties to exchange witness lists and not-yet-produced documents that they intend to use at the arbitration hearing "[a]t least 20 days before the first scheduled hearing date." FINRA Rule 12514 (a) & (b). In this case, the 20-day schedule would have established September 4, 2018, as the deadline for exchanging documents and witness lists. The parties, however, agreed to extend the document exchange deadline to September 10, 2018. Pursuant to the agreement, Wells Fargo provided the investors with approximately 1,800 pages of documents on September 6, 2018. The investors turned over approximately 1,600 pages of material on September 10, 2018. That same day, the investors moved to continue the hearing until November or December 2018, asserting that they needed additional time to review the new documents. The arbitrators denied the request.

In vacating the award, the superior court criticized the arbitrators for not explaining why they denied the request for continuance. It also concluded that Wells Fargo had violated FINRA's rules by failing to meet the 20-day deadline for exchanging documents. But we have found no rule or other authority requiring the panel to detail its reasons for denying the investors' continuance request. See FINRA

Rule 12601 (describing procedures for postponement of hearings); see generally FINRA Rule 12904 (f) & (g) (FINRA arbitrators are not required to explain the basis for an arbitration award unless all parties specifically request an explained decision). And the parties *agreed* to extend the document exchange deadline through September 10, 2018. Both sides met the newly established time frame, with each producing over 1,600 documents.

By the time the investors requested a continuance on September 10, 2018, their statement of claim had been pending for over 16 months, and the arbitration was scheduled to start 14 days later. Wells Fargo, which also had to review a large number of new documents, objected to delaying the multi-day hearing that involved numerous witnesses, experts, and arbitrators. Given the investors' consent to the delayed document exchange, as well as the complexities inherent in rescheduling a lengthy hearing with multiple parties and witnesses, the investors have not demonstrated that the arbitrators lacked a reasonable basis for denying the continuance request.

Furthermore, the record shows that the proceedings were, in fact, continued following a medical emergency on September 28, 2018, and the arbitration hearing reconvened approximately nine months later for an additional five days. The investors, therefore, had an extensive period before the conclusion of the arbitration

15

hearing to review the documents. Although they complain that they were required to commence the arbitration "without sufficient time to digest the late produced documents," the investors have not explained how their strategy or presentation might have changed had they been able to fully "digest" the material in September 2018. Accordingly, because the investors have not shown that they were prejudiced by the arbitrators' initial refusal to continue the hearing, the trial court erred in vacating the arbitration award on this ground. See *CM South East Texas Houston, LLC*, supra at 705 (II) (party failed to show that arbitrator's refusal to continue hearing following medical emergency in key witness's family caused prejudice; the witness provided hours of testimony, and although the party asserted that the witness "could have done a much better job" if not involved in a family emergency, it "fail[ed] to explain how he would have done so").

3. The superior court also found the arbitrators guilty of misconduct in (a) refusing to allow testimony from the investors' rebuttal witness, and (b) limiting the investors' cross-examination of a Wells Fargo expert. An award may be vacated if an arbitrator engages in misconduct by "refusing to hear evidence pertinent and material to the controversy." 9 USC § 10 (a) (3). This provision, however,

16

does not warrant vacatur where an arbitrator merely made an erroneous discovery or evidentiary ruling; rather, a [claimant] must show that the arbitrator's handling of these matters was in bad faith or so gross as to amount to affirmative misconduct, effectively depriving the [claimant] of a fundamentally fair proceeding.

*Pochat v. Merrill Lynch, Pierce, Fenner & Smith*, 2013 U.S. Dist. LEXIS 119447, *31 (C) (2) (S. D. Fla. 2013); see also *Akpele v. Pacific Life Ins. Co.*, 646 Fed. Appx. 908, 913 (III) (A) (11th Cir. 2016) ("[R]eview of arbitral evidentiary rulings is limited, but acting in bad faith, for example, may amount to misconduct under the FAA."); *Fowler v. Ritz-Carlton Hotel Co.*, 579 Fed. Appx. 693, 698 (IV) (B) (11th Cir. 2014) ("[A]n award is only vacated for refusing to consider evidence when an arbitrator's error is in bad faith or so gross as to amount to affirmative misconduct.") (citation and punctuation omitted).

(a) According to the superior court, the arbitrators engaged in misconduct by refusing to allow the investors to call their current Charles Schwab stockbroker as a rebuttal witness to address cross-examination testimony given by their own expert regarding their recent stock trading activity. In requesting permission to present the rebuttal witness, the investors argued that their Schwab broker was more familiar with

17

the trades than the expert and should be allowed to testify regarding the transactions. The arbitrators denied the request, finding as follows:

> Our impression is that there's some desire on [the investors'] part to rebut the — it wasn't so much the testimony of the expert, but rather the way the — the characterization of the information and the trade confirmation. That's our impression of what the goal is. And our belief is that that can be accomplished by [the investors], by counsel, during the argument. The trade confirms are in the record, and we would invite you to address that. We don't feel as if anything would be added by the Schwab representative, and that's our ruling.

The investors claim on appeal that the Schwab broker's testimony would have been relevant and non-cumulative. But they have pointed to no evidence that the arbitrators acted in bad faith or committed a gross error in refusing to admit it. Instead, after hearing argument and considering the matter, the arbitrators found the requested rebuttal testimony unnecessary, given the other evidence in the record. Although the investors disagree with this ruling, "a mere difference of opinion between the arbitrators and the moving party as to the correct resolution of a procedural problem will not support vacatur under section 10 (a) (3)." *Pochat*, supra at 32 (c) (2) (citation and punctuation omitted). The superior court erred in finding misconduct here.

18

(b) The superior court also concluded that the arbitrators improperly curtailed the investors' cross-examination of a "last minute" expert witness called by Wells Fargo. We do not have a full transcript of the arbitration hearing. Record excerpts cited by the investors, however, show that a dispute arose between counsel regarding the scope of the expert's testimony and whether he could answer questions about a particular document. The excerpts further show that the arbitrators did not rule on this dispute or restrict the investors' cross-examination. They admitted into evidence a document to which the investors objected. But they did not limit the investors' questioning of the expert. The superior court, therefore, erred in finding that the arbitrators "refus[ed] to permit counsel for the [i]nvestors to fully cross-examine" this witness.

4. Citing 9 USC § 10 (a) (1), the superior court also vacated the award after concluding that the award had been "procured by fraud." Specifically, the court found that Wells Fargo broker McKelvey, who was in the process of testifying when the hearing was continued in September 2018, offered conflicting "perjured" testimony when the hearing recommenced in July 2019; that counsel for Wells Fargo made factual misstatements during the hearing; and that Wells Fargo failed to turn over a

19

specified document until after the close of evidence, despite being ordered to produce the document by the arbitrators.

To show the fraud necessary to vacate an arbitration award: (1) "the movant must establish fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; and (3) the fraud must have materially related to an issue in the arbitration." *Floridians for Solar Choice v. Paparella*, 802 Fed. Appx. 519, 523 (11th Cir. 2020) (citation and punctuation omitted). The moving party must satisfy all three prongs before a trial court can vacate an arbitration award for fraud under 9 USC § 10 (a) (1). See id.

As an initial matter, we have not been able to locate any record evidence of McKelvey's testimony from the September 2018 proceeding, which evidently was audio-recorded, but not officially transcribed. The audiotape is not in the appellate record. And although the investors provided a recap in their brief of what they contend the audiotape shows with respect to McKelvey's September 2018 testimony, "[s]tatements of fact in the briefs of the parties unsupported by evidence in the record cannot be considered on appeal." *Beasley v. Wachovia Bank*, 277 Ga. App. 698, 698 (627 SE2d 417) (2006).

It is clear, however, that counsel for the investors was aware of the purported conflicts in McKelvey's testimony when he cross-examined McKelvey in June 2019. Counsel stated during a June 2019 arbitration session that he did not have a transcript of the September testimony.[4] But he asserted that he had "notes" and recalled the prior testimony. Counsel cross-examined McKelvey about the alleged inconsistencies and challenged statements by Wells Fargo's counsel, who insisted that the testimony was consistent. Because McKelvey's allegedly inconsistent testimony was discoverable — and was, in fact, discovered — by the investors during the arbitration, it does not support a finding of fraud. See *Freeman v. Citibank, N.A.*, 2015 U.S. Dist. LEXIS 197610, *35 (II) (B) (1) (N. D. Ga. 2015) (no vacatur for fraud where claimant was aware of alleged misconduct during arbitration, brought it to the arbitrators' attention and challenged it through objections).

The investors also complain that while their counsel was cross-examining a Wells Fargo expert regarding a stock trade report, counsel for Wells Fargo made factual misstatements about the meaning of certain dates on the report. We have not been able to find a complete excerpt of this cross-examination in the record. The

---

[4] Although the investors claim that the audiotape of the September 2018 proceedings were not available to the parties or the arbitrators at that point, they have provided no authority or record cite to support that assertion.

21

available record shows, however, that when the investors' counsel questioned the accuracy of opposing counsel's factual statements during the arbitration, opposing counsel noted: "I was speaking as to my knowledge as to how they do their [report]. If you've got a question about a specific situation . . . [you can ask] the guy who did [the report]," who was yet to testify. Opposing counsel's allegedly inaccurate statements, therefore, were either discovered or discoverable during the arbitration. See *Freeman*, supra.

Similarly, the record shows that Wells Fargo produced the document it had been ordered to produce before the arbitration concluded, and counsel for Wells Fargo asked that it be made an exhibit to the arbitration. Like the other alleged instances of fraud, the investors knew or should have known about the late production before the hearing adjourned. Wells Fargo's conduct provides no grounds for a fraud-based vacatur. See generally *Floridians for Solar Choice*, supra; *Freeman*, supra.

5. Finally, the superior court vacated the arbitration award under 9 USC § 10 (a)(3) after finding that the arbitrators improperly ordered Leggett to pay $32,200 in hearing session fees and directed him to reimburse Wells Fargo for $51,000 in costs. In the court's view, the arbitrators ignored the parties' arbitration agreement and "dispens[ed] their own brand of industrial justice" in imposing these costs and fees.

22

Again, however, an arbitration award may only be vacated under 9 USC § 10 (a) (3) when the arbitrators' conduct "was in bad faith or so gross as to amount to affirmative misconduct, effectively depriving the [claimant] of a fundamentally fair proceeding." *Thames v. Woodmen of the World Life Ins. Society*, 2013 U.S. Dist. LEXIS 114489 at *15 (II) (B) (1) (S. D. Ala. 2013). Nothing indicates that the arbitrators engaged in such misconduct or misbehavior.

(a) *Costs.* According to the superior court, "FINRA's Code of Arbitration Procedure . . . does not contain any provision granting arbitrators the authority to shift the expenses of litigation [to the opposing party]." But the FINRA rules permit an arbitration panel to impose monetary sanctions (including assessing costs and fees) against a party that fails to comply with any provision of the Code. See FINRA Rule 12212 (a). Among other things, the Code requires witnesses to testify under oath. See FINRA Rule 12605. The arbitrators specifically found that Leggett — the only claimant against whom costs were assessed — had provided false testimony during the arbitration.

In addition, FINRA's procedures allow a panel to allocate costs "that are within the scope of the [arbitration] agreement." See FINRA Rule 12902 (c). Although parties generally bear their own costs in litigation, judicial and quasi-judicial bodies

23

(including an arbitration panel operating under the FAA) are authorized to award attorney fees and/or costs under the bad faith exception to this general rule. See *Marshall & Co. v. Duke*, 114 F3d 188, 189-190 (2) (11th Cir. 1997). The broad language of the parties' arbitration agreement did not strip the panel of its ability to award costs as a sanction for bad faith conduct. See *ReliaStar Life Ins. Co. v. EMC Nat. Life Co.*, 564 F3d 81, 87-88 (2) (C) (2d Cir. 2009) (language of parties' arbitration agreement did not restrict arbitrator's authority to impose sanction for bad faith conduct). The arbitrators, therefore, had the authority to impose sanctions for bad faith.[5] See id.

A witness testified that Wells Fargo had incurred costs of over $51,000 during the arbitration process. Given this testimony, as well as the arbitrators' conclusion that Leggett presented false claims and untrue testimony during the arbitration, the arbitrators did not engage in misconduct or misbehavior by ordering Legett to

---

[5] The parties' agreement provided that the arbitration would "be conducted pursuant to the [FAA] and the Laws of the State of New York." To the extent the issue of costs was governed by New York law, we note that judicial bodies in New York may impose costs as a sanction for "frivolous conduct," which includes assertions of "material factual statements that are false." 22 NYCRR § 130-1.1 (c) (3).

reimburse Wells Fargo for $51,000 in costs.[6] See, e.g., FINRA Rule 12212 (a);

*Perichak v. Intl. Union of Electrical Radio & Machine Workers, Local 601*, 715 F2d

78, 84 n.9 (III) (3d Cir. 1983) (claimant's "materially false statements made under

oath are, having been critical to the success of his case, alone, enough to support a

finding of bad faith") (citation and punctuation omitted).

(b) *The Hearing Session Fees*. The arbitrators further ordered Leggett to pay

the hearing session fees for the arbitration. See FINRA Rule 12902 (a) (1) ("In the

award, the panel will determine the amount of each hearing session fee that each party

must pay."). Pursuant to FINRA Rule 12100 (p), a "hearing session" is "any meeting

between the parties and arbitrators of four hours or less, including a hearing or a

prehearing conference." The arbitrators determined that the proceedings consisted of

23 total hearing sessions. Using guidelines set forth in FINRA Rule 12902 (a), the

---

[6] The superior court vacated this portion of the arbitration award based on the misconduct/misbehavior provision in 9 USC § 10 (a) (3). It did not rely on 9 USC § 10 (a) (4), which prohibits an arbitrator from exceeding his or her powers. Because the arbitrators were authorized to impose costs as a sanction, however, 9 USC § 10 (a) (4) also would provide no basis for vacatur.

arbitrators calculated the fee for each hearing session to be $1400, for a total fee of $32,200.[7]

The investors do not question the arbitrators' decision to assess Leggett with the hearing session fees. Instead, they argue that the panel miscalculated the appropriate fee. They claim that because the panel awarded Wells Fargo $51,000 in costs, the fee per session should have been based on that amount under FINRA Rule 12902 (a) (4), which provides: "If hearing session fees are allocated against a customer in connection with a claim filed by a member or associated person, the amount of hearing session fees the customer must pay must be based on the amount actually awarded to the member or associated person." The investors assert that because the proper fee for a $51,000 claim is $750 per session (not $1400 per session), Leggett should have only been assessed with $17,250 in fees. See FINRA Rule 12902 (a) (1). The superior court accepted this calculation, finding that the arbitrators erroneously imposed fees "inconsistent with the FINRA Code of Arbitration Procedure."

_____

[7] As shown by current Rule 12902, the session fees have increased since this arbitration award was issued in 2019.

26

We disagree. Wells Fargo did not file a claim for costs. And even if it did, the arbitration panel properly assessed hearing fees based on the *investors*' claim for damages against Wells Fargo. Pursuant to FINRA Rule 12902 (a) (3), if a proceeding involves more than one claim, "the amount of hearing session fees will be based on the largest claim in the proceeding." The largest claim in the proceeding — a claim for more than $1.5 million against Wells Fargo — established $1400 as the proper fee for each hearing session. See FINRA Rule 12902 (a) (1).

6. "As long as [an] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Intl. Union v. Misco, Inc.*, 484 U. S. 29, 38 (II) (A) (108 SCt 364, 98 LE2d 286) (1987). The superior court provided no proper basis for vacating the arbitration award under 9 USC § 10. Accordingly, we reverse.

*Judgment reversed. Dillard, P. J., and Markle, J., concur.*

27